666 F.2d 1
 Bibi ANGOLA (former name Beatrice Watson), Plaintiff-Appellant,
v.
Benjamin R. CIVILETTI, Attorney General of the United
States; William H. Webster, Director of the Federal Bureau
of Investigation; Neil J. Welch, Assistant Director in
charge of the New York Office, Federal Bureau of
Investigation; Joseph MacFarlane, Special Agent in Charge
(SAC) of the New York Office, Federal Bureau of
Investigation; and Ronald W. Butkiewicz; Edward Peterson and
Robert Cordier, Special Agents, Federal Bureau of
Investigation, Defendants-Appellees.
 No. 312, Docket 80-6120.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 22, 1980.
Decided Jan. 6, 1981.
 
 William M. Kunstler, New York City (Margaret L. Ratner, Randolph McLaughlin and Michael D. Ratner, New York City, and C. Vernon Mason, New York City, on brief), for plaintiff-appellant.
 Thomas D. Warren, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., and Peter C. Salerno, Asst. U.S. Atty., New York City, on brief), for defendants-appellees.
 Before TIMBERS and NEWMAN, Circuit Judges, and PORT, Senior District Judge.*
 TIMBERS, Circuit Judge:
 
 
 1
 Appellant Bibi Angola appeals from a judgment entered in the Southern District of New York, Whitman Knapp, District Judge, dismissing her complaint seeking injunctive and declaratory relief against alleged violations of her constitutional rights by government officials. The sole and narrow issue on appeal is the legal sufficiency of the complaint. We hold, for the reasons stated below, that the complaint, as amplified at a hearing before Judge Knapp and by affidavits, was sufficient.
 
 
 2
 Appellant commenced this action against Benjamin R. Civiletti, United States Attorney General, William H. Webster, Director of the Federal Bureau of Investigation (the Bureau), and five employees of the Bureau, seeking declaratory and injunctive relief against certain past and future acts of defendants claimed to violate her constitutional rights and those of her associates. All defendants were sued in their official capacities only. The district court denied appellant's motion for a preliminary injunction and dismissed her complaint in an opinion dated June 2, 1980. From the judgment entered thereon on June 12, 1980, appellant has appealed. The case is properly before us as an appeal from a final judgment of a district court within our federal question jurisdiction. 28 U.S.C. §§ 1291, 1339 (1976).
 
 I.
 
 3
 The facts as alleged and the proceedings in the district court may be briefly summarized. Appellant claims that the Bureau's interest in her and its actions complained of stem from her close relationship with one Assata Shakur, a/k/a Joanne Chesimard, and Richard Dhoruba Moore. Ms. Shakur is a convicted felon who escaped from a New Jersey prison on November 2, 1979. The United States District Court for the District of New Jersey issued a warrant for her arrest on November 3, 1979. Mr. Moore has sued the Bureau, along with other defendants, in a civil rights action pending in the United States District Court for the Southern District of New York.
 
 
 4
 The complaint, as amplified by the supporting affidavits and the claims of counsel at the hearing before Judge Knapp, alleges that conduct of agents of the Bureau has impaired appellant's enjoyment of her constitutional rights. The alleged conduct consists of several discrete occurrences: an agent forced his way into her apartment and terrorized her son in the course of an attempt to question her about Assata Shakur and others; the agent threatened to damage her future career as a lawyer if she did not cooperate in the investigation; the agent attempted to question her outside her apartment; other agents have visited, threatened, and harassed her and have attempted to interrogate and harass her relatives; agents have repeatedly slashed her automobile tires; and agents broke into the apartment of one of her friends, Ms. Adelona, at night, shortly after appellant had visited there, and terrorized her friend and others in the apartment building. Appellant alleges that all of these actions were committed against her, either directly or indirectly, for the purpose of coercing her into cooperating with the Bureau. She seeks a declaratory judgment that the alleged actions are unlawful and an injunction to prevent similar actions in the future.
 
 
 5
 Appellees have not answered the complaint. There has been no discovery. Appellees did file affidavits of two Bureau employees, one of whom is named as a defendant in this action. One affidavit alleges that in its attempt to locate Ms. Shakur the Bureau has attempted to contact all of her known associates. The second affidavit recounts the affiant's version of his visit to appellant's home on the date stated by appellant as the date when the alleged break-in and terrorism occurred. While this second affidavit disputes some of appellant's contentions concerning events at her home, neither affidavit makes any denial of the events alleged to have occurred at Ms. Adelona's apartment. Appellees also filed a Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction. The Memorandum contains no additional factual response to the complaint.
 
 
 6
 The district court issued an order to show cause why an injunction should not issue. At the hearing on the order to show cause, the parties stipulated that the hearing would constitute the final hearing on appellant's request for injunctive relief. The district court heard oral argument by counsel but refused to order an evidentiary hearing, stating that appellant had failed to make out a prima facie case. The district court, viewing the factual allegations in the light of appellant's claim of damage to her associational rights, held that there was no basis for inferring that the alleged unconstitutional actions taken by the Bureau against appellant's friends were "directed" at or in any way related to appellant.
 
 
 7
 We view appellant's factual allegations from a somewhat different legal perspective. In our view appellant has adequately stated a claim for violation of her right not to be coerced, by tactics of intimidation or harassment, into cooperating with law enforcement efforts. Since our approach to this case differs from the one primarily relied on by the parties and by the district court, we shall state initially the issue which they apparently regarded as controlling.
 
 II.
 
 8
 Appellant's claim of violation of her associational rights consists of four elements: first, that the Bureau took illegal actions against at least one of her friends; second, that the Bureau's actions were motivated by a desire on the part of its agents to coerce appellant; third, that appellant reasonably fears that such illegal and improperly motivated actions will recur; and fourth, that the fear prevents her from fully exercising her associational rights.
 
 
 9
 There is no doubt that associational interests, under certain circumstances, are entitled to constitutional protection against governmental interference. We assume arguendo that under the proper circumstances a claim having the elements set forth above might succeed.
 
 
 10
 Whether the claim in the instant case can succeed on a foundation of violation of associational rights would depend upon the presence of a constitutionally protected relationship. Appellant has alleged impairment primarily of a social relationship with her friend Ms. Adelona.
 
 
 11
 Freedom of association, like freedom of speech, is grounded on the requirements of our democratic form of government. Bates v. Little Rock, 361 U.S. 516, 523 (1960); National Association for the Advancement of Colored People v. Alabama, 357 U.S. 449, 460 (1967); De Jonge v. Oregon, 299 U.S. 353, 364 (1937). The courts have interpreted the right to freedom of speech much more expansively than they have the right to freedom of association. The latter right has been thought to be restricted to relationships having a predominantly political focus. See Tribe, American Constitutional Law § 12-23 (1978). We find it unnecessary in this case to determine whether a protected associational right may in some circumstances include social relationships because we rest our decision on a different ground, to which we now turn.
 
 III.
 
 12
 Every person enjoys some measure of protection against being coerced into cooperating with law enforcement authorities by governmental techniques of intimidation and harassment. Whether this protection derives from the liberty interest protected by the Fifth Amendment or the privacy interest protected by the First and Fourth Amendments or the interest in procedural regularity protected by the Due Process Clause is not crucial to our decision in this case.
 
 
 13
 Appellant's complaint is not simply that the raid on her friend's apartment will deter either or both of them from visiting the other. The complaint is that this raid was undertaken as a means of coercing appellant into cooperating with the government in its effort to apprehend Ms. Shakur. Worthy as that ultimate objective is, it may not be pursued by tactics of intimidation and harassment. Appellant is entitled to vindicate her personal right to have such tactics declared unlawful, if they have occurred, and to have them enjoined, if she can show a realistic risk of their recurrence. The government, of course, is entitled to seek appellant's cooperation, and, if rebuffed, may resort to the use of whatever lawful process may be available to elicit testimony of suspected criminal activity. But the government may not harass or intimidate her by using against her and her friends the tactics alleged to have been used in this case.
 
 
 14
 Obviously, improper motive is a crucial element of appellant's intimidation claim concerning the alleged actions by the Bureau against Ms. Adelona. Unless those actions were undertaken for the purpose of intimidating appellant, she has no standing to complain about them. Because of the importance of motive, we make the following observations on the sufficiency of the complaint in this respect.
 
 
 15
 Our Court has recognized that certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that, despite the general rule of Conley v. Gibson, 355 U.S. 41 (1957), detailed fact pleading is required to withstand a motion to dismiss. A claim of a conspiracy to violate civil rights is a clear example. Fine v. New York, 529 F.2d 70, 73 (2 Cir. 1975); Powell v. Workmen's Compensation Board, 327 F.2d 131, 133 (2 Cir. 1964). Nor have we permitted litigants to precipitate hearings into the motives of law enforcement agencies simply on an allegation that the motive was improper. United States v. Berrios, 501 F.2d 1207, 1211-12 (2 Cir. 1974) (allegation of belief in prosecutor's vindictive motive insufficient to warrant hearing in absence of evidence).
 
 
 16
 Without doubting that law enforcement activities on occasion may be undertaken for improper motives, such occurrences are infrequent. On its face, the claim in this case seems implausible. It is not likely that the Bureau decided to send 50 agents, "in combat dress and armed with shotguns and machine guns" (Complaint P 15), to Ms. Adelona's home in the middle of the night just to intimidate appellant who had visited there a few hours earlier. Law enforcement activities would be substantially impeded if the government were obliged to demonstrate the propriety of its motives every time a person files a lawsuit alleging that some action directed at others was really undertaken to intimidate him. Law enforcement authorities are properly called upon to demonstrate the lawfulness of their actions in the course of criminal prosecutions and in defending civil rights suits brought by the immediate victims of alleged denials of such rights. We should be exceedingly cautious before permitting a third category of suits brought by those who claim that law enforcement activities denying the rights of third persons were undertaken for the purpose of intimidating the plaintiffs. Rigorous pleading requirements should be the rule as to such claims.
 
 
 17
 In the instant case, however, we hold that, taking all of appellant's factual allegations into account, appellant has challenged the government's motive with sufficient specificity to require the government to respond to the complaint and to defend the action.
 
 
 18
 Reversed and remanded.
 
 
 
 *
 Hon. Edmund Port, Senior United States District Judge for the Northern District of New York, sitting by designation