The LEGAL AID SOCIETY, a Not-for-Profit Corporation, Plaintiff,

v.

ASSOCIATION OF LEGAL AID ATTORNEYS OF the CITY OF NEW YORK, District 65, United Automobile Workers, AFL–CIO, et al., Defendants.

No. 82 Civ. 7591 (RJW).

United States District Court,
S.D. New York.

Dec. 20, 1982.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for plaintiff; Aaron J. Schindel, New York City, of counsel.

Sipser, Weinstock, Harper, Dorn & Liebowitz, New York City, for defendants; Jerome Tauber, New York City, of counsel.

ROBERT J. WARD, District Judge.

This action represents an attempt by an employer to obtain an injunction prohibiting a striking union and its members and officers from disciplining union members who have crossed union picket lines. The plaintiff employer also seeks declaratory relief and damages. At this time the Court is faced with a motion by plaintiff for a preliminary injunction. Because plaintiff has failed to meet the standard in this Circuit for preliminary injunctive relief, plaintiff's motion is denied.

## BACKGROUND

This action was originally brought in the Supreme Court of the State of New York, County of New York. Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a), on the ground that plaintiff's complaint asserts claims based on federal law. The instant motion for preliminary injunctive relief has been brought pursuant to an order to show cause issued prior to the removal of this action to federal court by the Honorable Donald J. Sullivan, a Justice of the Supreme Court of the State of New York.

The defendants in this action are the Association of Legal Aid Attorneys, District 65, UAW, AFL–CIO (the "Association"); Carol Gerstl, president of the Association; and several individual members of the Association. The plaintiff is the Legal Aid Society (the "Society"), a not-for-profit corporation which provides legal services to indigents in New York City. The plaintiff is also the employer of the members of the defendant Association.

This action emerges amidst a labor dispute in which the membership of the Association has been on strike against the Society since October 22, 1982. For the purposes of the instant motion, defendants have not contested any relevant factual representations made by plaintiff. Because the Association's membership is comprised of attorneys, who are bound by professional and ethical obligations to their clients, the Association constitution recognizes that a strike cannot represent a complete work stoppage. The Association constitution articulates a standard that, in sum, permits union members to cross picket lines to appear in connection with cases in which a hearing or trial was in progress at the commencement of a strike. According to the Association, approximately 35 of its 600 members had, as of December 10, 1982, crossed picket lines in violation of the Association constitution. Disciplinary proceedings, which can lead to fines of up to one day's pay for every day that picket lines are crossed, have been commenced against several of the Association members who have crossed picket lines.

The Society seeks to enjoin any such fines and any further disciplinary proceedings. The core of the various claims made by plaintiff in this matter is that the defendants' disciplining of union members who cross picket lines constitutes an unlawful conspiracy. That conspiracy, according to plaintiff, has several unlawful purposes and effects. Plaintiff not only asserts claims on its own behalf, but also contends that it has standing to assert claims on behalf of two distinct groups of harmed individuals who are not parties to this action. The groups of individuals are 1) those union members who have crossed or wish to cross union picket lines, and 2) those indigent persons in need of the services of the Society who are deprived of such services as a result of the instant disciplinary proceedings.

Plaintiff's complaint is best understood by separating the allegations as to each group or party harmed. On behalf of itself, plaintiff has proffered two allegations of tortious interference. The first is that defendants have interfered with the Society's ability to perform its contractual obligations toward the City of New York to provide legal services for indigents charged with crimes. Second, defendants are said to have tortiously interfered with the Society's contractual, professional and ethical obligations to its clients to provide adequate legal representation.

On behalf of union members who wish to cross union picket lines, plaintiff has repeated its state-law claim of tortious interference with the ability of the attorneys to perform their contractual, professional and ethical obligations to represent their clients. In addition, plaintiff has charged that said interference results from a conspiracy by defendants to violate the civil rights of non-striking attorneys, and as such constitutes a violation of 42 U.S.C. § 1985(3).

Finally, on behalf of certain indigent persons in need of legal services, plaintiff repeats its allegation of a conspiracy in violation of 42 U.S.C. § 1985(3). Plaintiff argues in effect that the disciplining by defendants of union members who cross picket lines is part of a conspiracy intended to deprive the indigent of New York of their constitutional rights to due process, equal access to the courts, and equal protection of the laws. The injuries alleged by plaintiff on its own behalf, as to its relationships with its clients and with the City of New York, are said to constitute a concrete harm suffered by plaintiff as a result of this same conspiracy.

## STANDARD FOR RELIEF

The Court begins its analysis of the propriety of preliminary injunctive relief by determining the standard that should apply in the instant case. The generally applicable standard in this Circuit for preliminary injunctive relief is well settled. It requires a showing of (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting relief. *Jackson Dairy v. H.P.*

*Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *accord Sperry Int'l. Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982). The application of this general standard to the instant case is complicated somewhat by the fact that this action is brought on behalf of three distinct classes of injured parties, each of whom is alleged to have suffered from distinct types of harm, and each of whom raises distinct issues on the merits.

The Court turns first to the issue of irreparable harm. As to all three classes of injured parties, plaintiff has alleged harms for which there exist no adequate remedy at law. On behalf of the Society as well as on behalf of attorneys who wish to cross union picket lines, plaintiff has charged that defendants' disciplinary policies interfere with the performance of contractual, professional and ethical responsibilities for which money damages could not compensate. Similarly, the alleged deprivation suffered by certain indigent persons of equal access to the courts and other constitutional protections is not remediable on a post-hoc basis. While there may be some question as to the causal nexus between the actions challenged and the harms alleged, defendants, as noted, have not disputed plaintiff's factual allegations at this juncture.

The issue of the balance of the hardships is somewhat more complicated. In sum, the Court discerns no basis for construing any harms but those suffered by indigent clients as constituting a "balance of hardships tipping decidedly toward the party requesting relief." Defendants in this action, it must be remembered, are not only involved in an ongoing labor dispute with plaintiff, but are currently on strike. The Court has accepted plaintiff's allegation that the disciplinary proceedings at issue today are having a significant impact on the results and effectiveness of that strike. If that is the case, any preliminary injunction accorded in this matter would significantly weaken the strike, and undermine defendants' position in the ongoing labor dispute. Such developments would irreparably compromise important rights scrupulously preserved to defendants by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq. See NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 233–35, 83 S.Ct. 1139, 1148–49, 10 L.Ed.2d 308 (1963) (discussing "repeated solicitude for the right to strike" expressed by Congress in legislative history of NLRA); *see also International Association of Machinists and Aerospace Workers v. National Mediation Board,* 425 F.2d 527, 536–37 (D.C. Cir.1970) (noting "constitutional as well as common law underpinnings of the rights of employees to strike"). Irreparable harm to defendants' ability to effectively exercise their right to strike cannot, in the context of this case, be said to be a decidedly less significant hardship than those alleged to be suffered by the Society and by non-striking union members. As a result, the claims for preliminary relief on behalf of the Society and on behalf of non-striking union members can succeed only if plaintiff makes a showing of "likelihood of success on the merits."

The Court reaches a different conclusion, however, in regard to the claim asserted on behalf of indigent persons in need of legal services. On that claim, plaintiff has alleged the deprivation of rights that are among the most sacred in our constitutional system: the rights to equal access to the courts, to equal protection of the laws, and to counsel in criminal proceedings. *See generally Bounds v. Smith,* 430 U.S. 817, 821–25, 97 S.Ct. 1491, 1494–96, 52 L.Ed.2d 72 (1977); *Coleman v. Alabama,* 399 U.S. 1, 7–10, 90 S.Ct. 1999, 2002–03, 26 L.Ed.2d 387 (1970). Because defendants in this case have, for the purposes of the instant motion, conceded plaintiff's version of the facts, the Court need not ascertain at this juncture whether plaintiff has offered any substantiation for the claim that defendants' disciplinary proceedings have adversely affected the constitutional rights of said indigents. Such adverse effect has been alleged, and constitutes in the Court's view, a "balance of hardships tipping decidedly toward the party requesting relief." As a result, plaintiff need not show a likelihood of success on the merits of the claim made on behalf of indigents. That claim would

be the basis for preliminary injunctive relief if the Court perceived "sufficiently serious questions going to the merits to make them a fair ground for litigation."

## THE MERITS

█ The Court now turns to its assessment of the merits of the claims put forth by plaintiff. The Court discerns four significant barriers to plaintiff's ultimate success on the merits which, when taken together, leave no doubt but that plaintiff is not entitled to preliminary relief. The first two such barriers undermine all claims brought by plaintiff. Those are 1) that the subject matter of this action is within the exclusive primary jurisdiction of the National Labor Relations Board ("NLRB"), and is already substantially before the NLRB, and 2) that this Court is prohibited by the Norris-LaGuardia Anti-Injunction Act, 29 U.S.C. §§ 101 *et seq.*, from issuing the injunction sought by plaintiff. The third basis for denying preliminary relief is the marked likelihood that the Court is not faced here with circumstances that justify granting plaintiff standing to assert the claims of third parties. While this problem directly undermines only two of the three claims brought by plaintiff, a finding against plaintiff on this issue would also deprive the Court of pendent jurisdiction over plaintiff's remaining claim, thus requiring dismissal of the entire action. The fourth and final problem with plaintiff's request for relief is that plaintiff has failed even to raise substantial questions as to the existence of a conspiracy in violation of 42 U.S.C. § 1985(3). Plaintiff's complaint as to such a conspiracy is not only vague and entirely conclusory, but also identifies a group of alleged conspirators who, under the law of this Circuit, must be regarded for instant purposes as a single "person."

### NLRB Jurisdiction

█ It is well settled that, "(w)hen an activity is arguably subject to section 7 or section 8 of the (National Labor Relations) Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board...." *San Diego Bldg. Trades Council v. Garmon* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959); *see also Abrams v. Carrier Corp.*, 434 F.2d 1234, 1253 (2d Cir.1970), *cert. denied* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). The plaintiff employer in the instant case alleges that the defendant union is unlawfully coercing certain union members in the exercise of their right to cross picket lines and perform their duties as attorneys. Such an allegation raises an arguable claim of a violation of section 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A), which makes it an unfair labor practice for a union to "restrain or coerce" employees in the exercise of their rights guaranteed by section 7 of the NLRA, 29 U.S.C. § 157. Section 7 provides for the right of employees to engage in concerted union activity, which includes the right to strike. Section 7 also guarantees the right of employees "to refrain from any and all such activities," thereby additionally encompassing the right *not* to strike.

In *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), the Supreme Court ruled that disciplinary fines imposed by a union on union members exercising their right to refrain from concerted activity did not constitute an unfair labor practice. *See also NLRB v. Boeing Co.*, 412 U.S. 67, 71–78, 93 S.Ct. 1952, 1955–58, 36 L.Ed.2d 752 (1973). These rulings would seem to dispose of the instant suit, at least insofar as claims are asserted on behalf of the Society and non-striking attorneys. Plaintiff, however, argues in effect that the *Allis-Chalmers* doctrine should not apply to attorneys because of their professional and ethical obligations to their clients. Whatever the merits of such a contention, this is plainly not the forum in which to raise it. At least in the first instance, this issue should almost certainly be decided by the NLRB under the primary jurisdiction doctrine.

Several of the non-striking attorneys on whose behalf plaintiff now raises claims

apparently concur with the Court that the NLRB is the proper forum to hear their claims. On November 23, 1982, 10 non-striking members of the defendant Association filed an unfair labor practice charge with the NLRB alleging a violation by defendants of section 8(b)(1)(A) of the NLRA. Those attorneys alleged, *inter alia,* that the very acts complained of in the instant case constituted an unfair labor practice. That such a charge is currently pending represents, in the Court's view, an additional factor counseling against injunctive relief. *See generally Consolidated Express v. N.Y. Shipping Assoc.,* 641 F.2d 90, 94 (3rd Cir. 1981); *Hotel and Restaurant Employees v. Rollison,* 615 F.2d 788 (9th Cir.1980).

### The Norris-LaGuardia Act

The prohibitions contained in the Norris-LaGuardia Act represent the second basis for this Court's unfavorable assessment of plaintiff's likelihood of success on the merits. As a general proposition, the Norris-LaGuardia Act deprives the federal courts of jurisdiction to enjoin strikes or related labor activity. The Act is to be construed broadly, as reaffirmed by the recent discussion in *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n.,* —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982):

> "This Court has consistently given the anti-injunction provisions of the Norris-LaGuardia Act a broad interpretation, recognizing exceptions only in limited situations where necessary to accommodate the Act to specific federal legislation or paramount congressional policy."

*Id.* —— U.S. at ——, 102 S.Ct. at 2678.

Section 4 of the Norris-LaGuardia Act specifically enumerates a list of activities which, if lawfully undertaken in the course of a labor dispute, may not be enjoined by the federal courts. Section 5 adds the prohibition that the doing in concert of the acts enumerated in section 4 may not be enjoined as an unlawful combination or conspiracy. The protected acts enumerated in section 4(a) are "ceasing or refusing to perform any work or to remain in any rela-

tion to employment." Those enumerated in section 4(i) include, "advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified. . . ." Plaintiff has made no allegations of fraud or violence, nor raised any considerations which lead the Court to conclude that defendants' disciplinary proceedings are not encompassed by the language of section 4(i).

Plaintiff nevertheless contends that even if defendants' activities are among those enumerated in section 4, injunctive relief is not prohibited. The legal precedent cited for this proposition, however, is not on point, nor is plaintiff's argument persuasive. Plaintiff cites the Supreme Court's decision in *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 249–53, 90 S.Ct. 1583, 1591–93, 26 L.Ed.2d 199 (1970) for the proposition that the terms of the Norris-LaGuardia Act "must be accommodated to other important public policies." Reply Mem. for Plaintiff at 16. The holding in *Boys Markets,* however, cannot be read so expansively. *Boys Markets* recognized a narrow exception to the Norris-LaGuardia Act where a strike is undertaken in breach of a no-strike clause in a labor contract. As the Supreme Court stated in that case:

> "Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance or arbitration procedure."

*Id.* at 253, 90 S.Ct. at 1593. The narrowness of that exception has been reaffirmed in *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976); and in *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n., supra,* —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982).

Plaintiff's arguments for an exception to the strictures of the Norris-LaGuardia Act are of a markedly different sort. Plaintiff bases its arguments on the allegation that defendants' disciplinary proceedings inter-

fere with the rights of certain indigents to legal counsel and equal access to the courts, as well as other constitutional rights. In the context of this case, however, such an argument proves too much. Plaintiff cannot challenge defendants' disciplinary activities without in effect challenging the legality of the entire strike. Any deprivation of the right to counsel or breach of professional activities which is brought about by disciplining non-striking union members is, to an even greater degree, brought about by defendants' strike. Plaintiff, however, stops short of requesting an injunction against the entire strike, and with good reason. An injunction based on claims that a given strike represents a threat to the public weal is, in the absence of fraud or violence, precisely the kind of court intervention prohibited by the Norris-LaGuardia Act.

### Standing

The third consideration which leads the Court to deny plaintiff's motion for a preliminary injunction is perhaps the most difficult. That is the question of standing. Does the plaintiff Society have standing to assert the claims that it raises on behalf of its clients and some of its employees? This is potentially the most significant issue in this case, since, if it is ultimately resolved against plaintiff, the remaining pendent state law claims would presumably also have to be dismissed for lack of federal jurisdiction.

 The Court first addresses one preliminary matter. Standing is not generally regarded as an aspect of the "merits" of a given lawsuit. Depending on which strand of standing doctrine is at issue, it is either a constitutional or a prudential limitation on a court's jurisdiction. As such, an argument can be made that standing is not properly to be considered in the Court's evaluation of the plaintiff's likelihood of success on the "merits." Under such a view, questions about a party's standing to raise certain claims, especially when those claims represent the basis of the Court's jurisdiction, should be resolved prior to any

consideration of relief. Rather than simply denying relief, therefore, the Court could be compelled to dismiss the claims at issue.

This Court has rejected that approach. There is little doubt in the instant case that plaintiff has alleged a sufficiently adverse interest and a sufficiently concrete "injury in fact" resulting from defendants' actions to satisfy the "case or controversy" requirements of Article III of the United States Constitution. The standing concerns in this case are not constitutional, but rather "prudential." See Singleton v. Wulff, 428 U.S. 106, 112–18, 96 S.Ct. 2868, 2873–76, 49 L.Ed.2d 826 (1976). The Court's doubts as to plaintiff's standing to raise claims on behalf of third parties are based not on the conclusion that the Society would never have standing to raise claims on behalf of its employees or clients, but rather on the view that there are not adequate reasons in this case to allow plaintiff to raise such claims. The factors leading to this conclusion are discussed below. It is the Court's view, however, that the legal standards in this murky area of the law are sufficiently complex, and flexible, that an outright dismissal of plaintiff's case is not required at this time.

 The opinion of the Court of Appeals for the Second Circuit in Carey v. Klutznick, 637 F.2d 834 (2d Cir.1980), supports this Court's treatment of the standing issue. In Carey, as here, the court was faced with a motion for a preliminary injunction. The standing issue was treated in Carey as a preliminary aspect of the court's assessment of that plaintiff's likelihood of success on the merits, and was not addressed until after the court had found irreparable harm:

"In respect to likelihood of success on the merits, we preliminarily address the [defendant's] standing, political question, and justiciability arguments."

Id. at 838. Because the court in Carey concluded that the plaintiff did have standing, the precise issue faced by this Court did not need to be explicitly addressed. Nonetheless, the treatment of the standing issue in Carey supports the conclusion that, on a

motion for a preliminary injunction, problems of standing are to be considered within a court's assessment of "issues going to the merits," rather than as a threshold matter which must be resolved at the outset. This accords with the principle that a trial court's inquiry on a motion for a preliminary injunction is limited, and that disputes of law as well as disputes of fact may provide a fair ground for litigation. *Columbia Pictures Indus. v. American Broadcasting Co.* 501 F.2d 894, 897 (2d Cir.1974); *see also University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981).

■ Turning, then, to the issue of standing itself, the Court is of the view that the circumstances of this case do not appear to justify allowing plaintiff to assert the rights of its employees or clients. The relationship of plaintiff to these two groups is indeed a close one, and plaintiff is correct in arguing that the courts have allowed the assertion of *jus tertii* where the parties shared similarly close relationships. *See, e.g., Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (doctors asserting rights of patients); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (same); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (membership organization asserting rights of members); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (private schools asserting rights of students). The assertion of *jus tertii* has also been allowed where the relationship of a litigant to a third party was less close. *See, e.g., Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

Important distinctions, however, separate the cases relied upon by plaintiff from the instant lawsuit. In each of those cases, the Supreme Court has been careful to address the general policy of requiring injured parties to assert their own rights. That policy is in large part based on a concern that any right championed in court should be asserted by its most effective advocate. *See, e.g., Singleton v. Wulff,* 428 U.S. at 113–15, 96 S.Ct. at 2873–74 (Brennan, J., for four justices). The Supreme Court has usually required, however, that an injured party either be subject to "some genuine obstacle" to asserting its own rights, *see Singleton v. Wulff,* 428 U.S. at 116, 96 S.Ct. at 2875 (Brennan, J., for four justices), or that such assertion be "in all practicable terms impossible." *Id.* at 126, 96 S.Ct. at 2880 (Powell, J., for four justices). Plaintiff in the instant case is unlikely to meet either standard. In regard to non-striking union members, any claim that they cannot effectively assert their own rights is patently unfounded. Not only has plaintiff offered no support for its vague insinuation that such attorneys "fear retaliation," but those attorneys have demonstrated their ability to defend their own rights by filing an unfair labor practice charge with the NLRB. Furthermore, while there certainly exist situations in which an employer's interests are closely tied to those of some or all of its employees, a labor dispute is a singularly inappropriate context in which to allow an employer to claim to speak on behalf of any employees. In regard to those indigents for whom plaintiff attempts to speak, plaintiff may have a stronger case. Even here, however, plaintiff's bare assertion that the poverty of such persons renders them unable to assert their own rights appears, without more, a questionable basis for allowing plaintiff *jus tertii* standing.

Finally, it must be noted that in all of the cases relied upon by plaintiff, the rights asserted on behalf of third parties are constitutional rights. In the instant case, no constitutional right is asserted. Instead, plaintiff invokes 42 U.S.C. § 1985(3), which prohibits only *private* infringement of the right to equal protection of the laws. The Court is not oblivious to the close and profound relationship of the rights protected by 42 U.S.C. § 1985(3) and those protected by the Fifth and Fourteenth Amendments to the United States Constitution. Nor does the Court suggest that the

doctrine of *jus tertii* entirely excludes the assertion of statutory rights. Here, however, plaintiff's failure to assert constitutional rights is coupled with other factors counseling against granting standing to assert *jus tertii*. As such, it further undermines plaintiff's likelihood of ultimate success on the merits.

### Conspiracy under Section 1985(3)

Were the Court's inquiry in this decision limited to plaintiff's likelihood of success on the merits, it would scarcely be necessary to turn finally to the substantive weakness of plaintiff's claims under 42 U.S.C. § 1985 (3). The considerations discussed above convince the Court that plaintiff's chances of success on the merits are slight. As explained above, however, the Court is of the view that the harms allegedly suffered by plaintiff's indigent clients require that plaintiff be granted a preliminary injunction if it can show even "substantial issues going to the merits" as to those claims. Nonetheless, plaintiff's contention that defendants' disciplinary proceedings represent a conspiracy to deprive indigent clients of their civil rights raises no such substantial issues.

█ Stated simply, plaintiff's complaint is entirely conclusory. Plaintiff provides no basis whatever for a charge that defendants' actions, even if assumed to have harmed indigent persons, have been motivated by "invidiously discriminatory animus." *See Griffin v. Breckenridge,* 403 U.S. 88, 96–102, 91 S.Ct. 1790, 1795–98, 29 L.Ed.2d 338 (1971). Plaintiff's failure to address the issue of invidious motivation in non-conclusory terms is especially significant in the context of a labor dispute, where virtually any strike or related activity could be alleged to be a conspiracy to harm customers or clients. That the indigent clients in this case may well represent a "class" for the purposes of class-based discrimination hardly justifies an assumption of invidious animus. The Court of Appeals for the Second Circuit, furthermore, has repeatedly held that the requirement of particularity in pleading is especial-

ly significant when conspiracy is alleged. Accordingly, complaints containing only vague or conclusory allegations of conspiracy will not survive a motion to dismiss. *See Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981); *Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97, 107 (2d Cir.1981); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964).

█ In addition, the Court notes one failure in plaintiff's pleadings which undermines both of the claims brought pursuant to 42 U.S.C. § 1985(3). Section 1985 (3) explicitly requires a conspiracy between "two or more persons." It is the law of this Circuit that that requirement is not met where a conspiracy is alleged to have occurred among a corporation and its directors, "all of whom acted solely within their official capacities." *Girard v. 94th St. & 5th Ave. Corp.,* 530 F.2d 66, 70 (2d Cir. 1976), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798. That same principle was applied where a conspiracy was alleged to have been undertaken among a law school and several of its trustees and faculty members. *Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679. The Court sees no reason why a conspiracy which is alleged to have been perpetrated by a union and its officials is not similarly barred.

### CONCLUSION

█ In regard to the claims raised by plaintiff on behalf of itself and on behalf of attorneys who have crossed or wish to cross the defendant Association's picket lines, the Court concludes that plaintiff has failed to show a likelihood of success on the merits or a balance of hardships tipping decidedly in their favor. In regard to the claim asserted on behalf of indigent residents of New York City alleged to be deprived of legal representation by defendants' actions in disciplining non-striking union members, the Court concludes that plaintiff has not raised sufficiently serious

questions going to the merits to make them a fair ground for litigation. Accordingly, plaintiff's motion for a preliminary injunction is denied.

It is SO ORDERED.