M. Thomas KURIAKOSE and K.M. Kuriakose, Plaintiffs,

v.

CITY OF MOUNT VERNON, Ronald Blackwood, Thomas Butler, Commissioner of Buildings, Ericka Krieger, Linda Baker, Andriana Epps, Wesley Morgan, Leon Scott, Benjamin Marable, Louis Camisa, Louis Albano, Arthur Gutekunst, Commissioner of Police, Corporation Counsel and Commissioner of Public Works, Police Officer Williamson, Police Officer No. 28, and Seven Other Unknown Police Officers, Defendants.

No. 97 CIV. 169 (BDP) (GAY).

United States District Court, S.D. New York.

March 5, 1999.

M. Thomas Kuriakose, Mount Vernon, NY, Pro Se Plaintiff.

Vincent F. Fontana, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiffs M. Thomas Kuriakose and K.M. Kuriakose, *pro se*, of Asian Indian descent, initially brought an action against the City of Mount Vernon in Westchester County Supreme Court. That action was dismissed at the pleadings stage. On April 10, 1996, plaintiffs instituted an action in this Court against the City of Mount Vernon and various individuals. *Kuriakose v. City of Mount Vernon*, 98–CV–2548 (BDP). When this Court directed plaintiffs to file and serve an amended complaint, plaintiffs initiated the current action on January 10, 1997 by filing a new complaint with similar allegations. This Court then dismissed the prior action; plaintiffs have since filed two amended complaints in this action. Defendants now move for summary judgment against a number of claims in the second amended complaint. Plaintiffs have filed a cross-motion for summary judgment.

The Kuriakoses have asserted claims against the City of Mount Vernon (the "City"); Ronald Blackwood, the Mayor of the City during the relevant period; Thomas Butler and Ericka Krieger, the current and former Commissioner of the Building Department of the City (the "Building Department"); Linda Baker, Andrianna Epps, Wesley Morgan, Leon Scott, Benjamin Marable, and Louis Camisa, Code Enforcement Officers of the Building Department; Louis Albano, a Code Enforcement Officer and Plumbing Inspector of the Building Department; Arthur Gutekunst, Esq., a former Corporation Counsel of the City; the current Commissioners of the Department of Police, Public Works, Building, and Corporation Counsel of the City; Police Officer Williamson; Police Officer # 28; and seven other unknown police officers. The individual defendants are sued both in their official and individual capacities.

Plaintiffs' eleven count second amended complaint alleges violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and asserts claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, § 101 of the Civil Rights Act of 1991, and 18 U.S.C. § 1961. Plaintiffs' complaint also contains pendent state claims for conspiracy, fraud, abuse of power, intentional infliction of emotional distress, malicious prosecution, and tortious interference with contractual relations. For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part; plaintiffs' cross-motion for summary judgment is denied.[1]

## BACKGROUND

In July 1987, M. Thomas Kuriakose made a written complaint to defendant Mayor Blackwood, asking him to investigate certain acts of City employees, including employees of the Building Department, Police Department, Public Works Department, and judges in the City Court. Kuriakose alleges that on July 22, 1987, the same day that Blackwood responded to his complaint and promised an investigation into plaintiffs' allegations, Kuriakose was arrested, handcuffed, and detained. Sub-

---

**1.** This Court notes that plaintiffs' Local Rule 56.1 statement is improper in that it fails to cite to admissible evidence. It is thus insufficient to create any material issues of fact.

sequently, on January 28, 1988, Kuriakose was arrested for non-payment of a $100 fine based on an arrest warrant issued by City Court Judge Downy Rodriguez. Plaintiff contends that the fine had been immediately paid by check. Kuriakose was arrested on one other occasion, on October 11, 1990, when he was at City Court on other business. Kuriakose contends that on that occasion, the summons, which was returnable on October 11, was filed only the day before, and not on October 4 as required.

Since 1980, plaintiffs have owned commercial properties in Mount Vernon. Over the course of the last ten years, plaintiffs have been cited for various building code violations. While defendants contend that these violations could not be dismissed because of plaintiffs' failure to correct them, plaintiffs contend that many of the violations were either abated or non-existent and therefore should have been dismissed. In addition, plaintiffs' cite one occasion in 1991, and three other occasions between 1991 and 1995, in which they contend that building code violation notices were improperly issued. Plaintiffs also allege that instead of dismissing any of the non-existent violations from the City's records, defendants Baker, Morgan, and Marable contacted plaintiffs' tenants and conspired with them to create new violations in plaintiffs' buildings.

On January 13, 1993, Krieger notified plaintiffs that she was appointing a "Task Force" to look into remaining open violations on plaintiffs' properties. Plaintiffs contend that rather than investigating already existing violations, the Task Force issued new violations and directed plaintiffs' tenants not to pay rent. In addition, Baker and Krieger allegedly notified the Westchester Department of Social Services that one of plaintiffs' buildings contained "dangerous or hazardous condition" or conditions detrimental to life or health. Plaintiffs contend that as a result, the Department of Social Services then stopped payment of rent. On July 29, 1993, Krieger and Baker dismissed certain violations they had issued after the task force was appointed, and reported to the Department of Social Services that the building previously reported to be dangerous was not in "dangerous or hazardous condition." Plaintiffs claim that appointment of the Task Force was to punish the plaintiffs for exercising their First Amendment rights. Plaintiffs also contend that the defendants singled them out for enforcement of the housing laws because of plaintiffs' exposure of the officials of the Building Department and because of plaintiffs' race.

## DISCUSSION

### I. Summary Judgment Standard

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Hayes v. New York City Department of Corrections, 84 F.3d 614, 619 (2d Cir.1996); Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991). This Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." McNeil v. Aguilos, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); Hayes, 84 F.3d at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 382 (2d

Cir.1996). *Pro se* litigants, in particular, are afforded special consideration. A *pro se* party's supporting papers are to be construed liberally and held to less stringent standards than pleadings submitted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). In this case, however, Kuriakose is an attorney who was at one time admitted to practice in New York state. The usual *pro se* rules therefore do not apply to him.

## II. *Counts I and V*

Count I of plaintiffs' complaint alleges that defendants Blackwood, Butler, Krieger, Baker, Epps, Morgan, Scott, Marable, Camisa, Albano, and Gutekunst conspired to commit fraud and to deprive plaintiffs of their constitutional and civil rights in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1983, 1985(2), 1988, and 18 U.S.C. § 1961. Count V of the complaint asserts claims against the City for federal civil rights violations under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. Defendants move for summary judgment on Count I on the grounds that the record keeping processes of the City of Mount Vernon and its employees are discretionary. They also move for summary judgment on Counts I and V on the grounds that 1) the statute of limitations for causes of action brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 is three years; and 2) plaintiffs cannot maintain a cause of action under 42 U.S.C. § 1985. Finally, defendants move for summary judgment on Count V against the City on the grounds that plaintiffs have not shown a municipal custom or policy that resulted in a violation of plaintiffs' constitutional rights.

While defendants argue that the record keeping processes of the City of Mount Vernon and its employees are products of discretion, and thus any of plaintiffs' build-ing code violations left in the records did not constitute an abuse of power, this argument overlooks the substance of many of plaintiffs' allegations in Count I; for example, plaintiffs' allegations that a number of building code violation notices were improperly issued against them. Defendants are not entitled to dismissal of Count I on these grounds.

In addition, while defendants allege that plaintiffs' claims under §§ 1981, 1983, and 1985, and 1986 are time-barred under the applicable statutes of limitation, their papers are wholly inadequate to address the statute of limitations argument. With respect to that argument, defendants' papers merely state that the relevant statutes of limitations are three years, and that any of plaintiffs' claims that accrued prior to May 1993 are time-barred. Defendants, however, fail to specify how much of which claims they believe are actually time-barred. Defendants' motion for summary judgment on plaintiffs' §§ 1981, 1983, 1985, and 1986 claims on statute of limitations grounds is denied.

### A. *42 U.S.C. § 1985*

In Count I of their complaint, plaintiffs allege violations of 42 U.S.C. § 1985(2). (Sec.Am.Compl.¶ 88.) Count V is less specific, generally alleging against the City a violation of 42 U.S.C. § 1985. (Sec.Am. Compl.¶¶ 119, 130.)

■ 42 U.S.C. § 1985 prohibits conspiracies to interfere with civil rights. With respect to a claim of a conspiracy to violate civil rights, our Circuit has recognized the necessity of a detailed fact pleading to withstand a motion to dismiss. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981). In addition, "plaintiffs pursuing a conspiracy claim must set forth sufficient facts to establish the required elements, not merely vague and conclusory statements that track the statutory language." *Cuban v. Kapoor Bros., Inc.*, 652 F.Supp. 28, 36 (E.D.N.Y.1986).

Here, however, plaintiffs have alleged the existence of a conspiracy in only conclusory terms. Without setting forth any factual support, plaintiffs allege that defendants conspired through the "manipulation of court records," "secret meetings" with a city judge, and "demands for bail for abated building code violations." (Sec.Am.Compl.¶ 24(h), (1), (m).) As part of the same conspiracy, defendants allegedly "harassed plaintiffs without provocation," "treated [plaintiff] as a mad dog," "hunted [plaintiff] in the name of an unsigned warrant," and caused plaintiff to appear in Court under false pretenses in order to effectuate an arrest. (*Id.* ¶¶ 24(I)-(1).) Plaintiffs further allege the defendants "conspired and committed fraud to get plaintiff Kuriakose arrested [on more than one occasion]," (Sec.Am. Compl.¶ 24(1)), issued violations in order "to help tenants to avoid payment of rent or create some records that the property was in bad shape, for future use ... [and to] help friends, cronies and/or relatives" (*Id.* ¶¶ 25, 29), appointed a Task Force to investigate violations that "could have been dismissed," and "illegally kept corrected/non-existing violations in the record." (*Id.* ¶¶ 37, 56.) Such allegations, devoid of factual support, are insufficient in themselves to withstand a motion to dismiss; moreover, plaintiffs have offered no evidence to support their conspiracy claims. As a result, they cannot withstand a motion for summary judgment on this claim. Defendants' motion for summary judgment on plaintiffs' § 1985 conspiracy claim is therefore granted.

### B. 42 U.S.C. § 1983

Plaintiffs cannot withstand a summary judgment motion with respect to their § 1983 claims against the City. A municipality is liable under 42 U.S.C. § 1983 only when "the execution of a government's policy or custom ... inflicts the injury." *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). "Municipalities are liable only if the action alleged to be unconstitutional implements a statement, ordinance, regulation or decision promulgated by the governing body of officers, or a 'common custom' of the municipality even where such custom has never been officially adopted or approved." *Ortiz v. Court Officers of Westchester County,* No. 95 Civ. 1194(MBM), 1996 WL 531877, *4 (S.D.N.Y. Sept.19, 1996) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). To state a claim against a municipality based on the action of its employees, a plaintiff must show a pattern or policy by the officials involved that is so persistent as to amount to a "custom" or "usage." *Turpin v. Mailet,* 619 F.2d 196, 199 (2d Cir.1980).

In this case, plaintiffs fail to show that the alleged Constitutional violations resulted from a government policy or custom. Plaintiffs assert blanket and conclusory accusations of a policy or custom of: 1) deliberate indifference to the "culpable and unconstitutional conduct of City officials" and 2) inadequate training of City employees. (Sec.Am.Compl.¶¶ 118–130). Such bare assertions, in the absence of any evidence of either the relevant policies or that the officials' actions were so persistent as to constitute custom or usage, are insufficient to create an issue of fact. *See Amato v. City of Saratoga Springs,* 972 F.Supp. 120, 127 (N.D.N.Y.1997). Defendants' motion for summary judgment on plaintiffs' § 1983 claim against the City is granted.

### III. *Count II*

Count II asserts a claim against Baker, Krieger, Albano, and Gutekunst for federal civil rights violations emanating from malicious prosecution. In order to prevail on a claim for malicious prosecution in New York, a plaintiff must show:

> 1) the initiation of an action by the defendant against [him], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in

failure, or in other words, terminates in favor of the plaintiff.

*Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir.1998) (citations omitted). Plaintiff claims that the individual officers of the Building Department issued an Appearance Ticket to him to appear before the City Court on January 24, 1995 for an offense that they first alleged was committed on January 10, 1994, then changed to April 7, 1994. The proceedings against plaintiff were dismissed on or about May 27, 1996 for failure of the defendants to appear. Because plaintiff offers only conclusory allegations in support of his malicious prosecution claim, and fails to set forth any facts showing either that the prosecution was begun either with malice or without probable cause, defendants' motion for summary judgment on Count II is granted. Further, as plaintiffs' only allegations as to the Corporation Counsel are made with respect to malicious prosecution, defendants are granted summary judgment with respect to plaintiffs' claims against the Corporation Counsel.

## IV. *RICO Claims—Count IV*

 Count IV asserts a claim against defendant Baker for her "common and continuous pattern of fraudulent schemes," allegedly "constituting a pattern of racketeering activity" pursuant to 18 U.S.C. § 1961 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In order to maintain a claim under RICO, plaintiffs must show a "pattern of racketeering activity," i.e., at least two acts of racketeering activity. 18 U.S.C. § 1961(5). Section 1961 further defines racketeering activity as:

(A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), ... or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, ...

18 U.S.C. § 1961(1). In their complaint and supporting papers, plaintiffs fail to set forth the acts of racketeering activity that they allege constitute the pattern of racketeering activity to sustain their RICO claim.

 "[T]he essential elements of a mail [or wire] fraud violation are (1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or wires] to further the scheme." *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996) (internal quotations omitted); 18 U.S.C. §§ 1341, 1343. A securities fraud claim requires a showing, *inter alia*, "not only that defendant's fraudulent acts caused him to enter into a securities transaction, but also that the defendant's fraudulent conduct caused the plaintiff's eventual loss." *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 189 (2d Cir. 1995). Allegations of fraud must be pleaded with particularity under Fed.R.Civ.P. 9(b). *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir.1992). This means that the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)). A simple scheme to defraud is not actionable under RICO. *Roso v. Saxon Energy Corp.*, 758 F.Supp. 164, 170 (S.D.N.Y.1991).

To the extent that plaintiffs' complaint is based on RICO predicate acts of mail, wire, or securities fraud, the complaint and supporting materials fail to allege the use of the mails or wires in furtherance of a scheme to defraud, nor do they mention securities fraud. To the extent that plaintiffs seek recovery against Baker for a

simple scheme to defraud, such a claim is not actionable under RICO. Summary judgment is therefore granted to defendant Baker on Count IV for violations of RICO.

## V. *Count VI*

In Count VI, plaintiffs assert against all defendants pendant state claims of conspiracy, fraud, abuse of process, intentional infliction of emotional distress and malicious prosecution. Defendants move for summary judgment on plaintiffs' conspiracy, fraud, abuse of process, and malicious prosecution claims. First, for the reasons stated previously, summary judgment is granted to defendants on plaintiffs' claims for conspiracy and malicious prosecution.

Second, with respect to plaintiffs' fraud claims, under New York law, a claim for fraud requires that "a plaintiff must show an intentional misrepresentation of a material fact resulting in some injury." *Held v. Kaufman*, 91 N.Y.2d 425, 431, 671 N.Y.S.2d 429, 694 N.E.2d 430 (1998). Here, plaintiffs allege that defendants Baker, Krieger, and Housing Inspector Louis Albano issued an Appearance Ticket to plaintiffs on the basis of abated and/or dismissed violations, and that "[i]ssuing of non-existing or abated violations to substantiate an Appearance Ticket is patently fraud. Fraud upon the plaintiff and fraud upon the Court." (Sec.Am. Compl.¶ 134.) Without any showing that the defendants knew the violations had been abated and issued the ticket anyway, however, defendants' motion for summary judgment on plaintiffs' fraud claim is granted.

Third, an abuse of process claim has three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). Here again, plaintiffs have set forth no evidence to show that defendants intended to harm them, or how that process was used in a perverted manner to obtain a collateral objective. Consequently, defendants' summary judgment motion is granted with respect to plaintiffs' abuse of process claim.

## VI. *Count VIII*

Count VIII challenges the February 19, 1997 stop and detention of plaintiff Kuriakose by Police Officer Williamson, Police Officer Shield Number 28, and seven others. Plaintiff contends that he was stopped and detained for more than forty-five minutes in the cold for no reason. Defendants argue that the stop of Kuriakose amounted to an "investigative stop," which involves a limited investigative stop of an individual and must be based on "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir.1992) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (other citations omitted)). Defendants also appear to argue that because Kuriakose was not detained, and neither coercion nor force were used against him, no seizure implicating the Fourth Amendment occurred. This argument, however, is irrelevant, because, as defendants note, an investigatory stop is in itself a seizure, and must thus be based on reasonable suspicion.

In order to determine whether an officer had sufficient information to justify an investigatory stop, the court must review the totality of the circumstances surrounding the stop. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Salazar*, 945 F.2d 47, 50 (2d Cir.1991). This review involves a consideration of both the substance of the information possessed by the officer, and the reliability of that information. *United States v. Bold*, 19 F.3d 99, 102 (2d Cir.1994).

■ The police reports submitted in connection with this incident do not dispose of plaintiffs' claim. While Officer Williamson's report states that they were dispatched on account of a report of a red BMW driving recklessly, there is no way to evaluate the reliability of that report. *Cf. Alabama v. White,* 496 U.S. 325, 331, 110 S.Ct. 2412, 2416–17, 110 L.Ed.2d 301 (1990) (anonymous tip, when corroborated by police, furnished reasonable suspicion for investigative stop); *United States v. Bold,* 19 F.3d at 102 (partially corroborated anonymous tip provided reasonable suspicion for investigative stop); *United States v. Medina,* No. S3 94 Cr. 872(SAS), 1998 WL 241724, *3 (S.D.N.Y. May 11, 1998) (motorist who flagged down police car provided firsthand account of events he had observed; in contrast to anonymous tipster, motorist risked being held liable if he lied about incident). In addition, there is no indication in the police report that Officer Williamson observed for himself that the BMW was in fact driving recklessly until after the stop, at which time he observed that the vehicle was hesitating and jerking as it pulled away. On the basis of the evidence submitted, this Court cannot conclude that the defendant officers' stop of plaintiff was based on reasonable suspicion; defendants' summary judgment motion on Count VIII is therefore denied.

■ Defendants also move for qualified immunity for the police officers. In our circuit, "[a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996). In this case, the law on investigative stops was clearly established at the time of plaintiff's stop, and the officers should have known that such a stop required reasonable suspicion. Because whether the officers actually had or should have believed they had reasonable suspicion for the stop remains unclear at this time, defendants' motion for qualified immunity is denied, with leave to renew at trial.

VII. *§ 101 of the Civil Rights Act of 1991*

■ Counts I, III, and V of plaintiffs' complaint assert violations of § 101 of the Civil Rights Act of 1991. Section 101 of the Civil Rights Act of 1991 refers to the 1991 amendment to 42 U.S.C. § 1981. *See, e.g., Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 302, 114 S.Ct. 1510, 1514, 128 L.Ed.2d 274 (1994). Defendants' sole argument for summary judgment on these claims is that § 101 of the 1991 Civil Rights Act applies only to employment discrimination, and thus does not apply to this case. Defendants, however, overlook the language of *Rivers,* in which the Supreme Court expressly stated: "Moreover, § 1981 (and hence § 101) is not limited to employment; because it covers all contracts, ... a substantial part of § 101's sweep does not overlap Title VII." *Id.,* 511 U.S. at 304, 114 S.Ct. at 1515 (citations omitted). Accordingly, defendants' motion for summary judgment on defendants' § 101 claims is denied.

VIII. *Claims Against Mayor, Commissioner of Buildings, Commissioner of Police, and Commissioner of Public Works*

■ Plaintiffs' claim against the Mayor in Count X is that he ran an inefficient administration. Such an allegation is not actionable under either federal or state law. In addition, Kuriakose stated in his deposition that he named the Commissioner of Police in his complaint for convenience, and he does not make any specific allegations against the Commissioner of Public Works. Plaintiffs' complaint does, however, make specific allegations of wrongdoing against the Commissioner of Buildings; namely, that the Building Commissioner was directly responsible for many of the wrongs plaintiffs allege in their complaint. Accordingly, summary

judgment is granted on plaintiffs' claims against the Mayor, Commissioner of Police, and Commissioner of Public Works.

## IX. *Default Judgment*

Plaintiffs move for default judgment against all individual defendants except Blackwood and Gutekunst. Defendants respond by stating, in their brief, that the individual defendants were never properly served. This Court cannot accept the unsworn allegations of either plaintiffs or the defendants' attorneys as dispositive on this issue. As a result, plaintiffs' motion for default judgment against the individual defendants is denied.

## X. *Collateral Estoppel*

Plaintiffs argue that the issues raised by defendants are barred by res judicata and collateral estoppel. Plaintiffs base their argument on the fact that defendants' motion to dismiss in their prior case (96 Civ. 2548(BDP)) was denied. That motion, however, brought pursuant to Fed. R. Civ. 12(b)(6) and 12(h), was denied without prejudice so that plaintiffs could serve and file an amended complaint, and came with the precautionary statement that if plaintiffs' amended pleading did not comply with Fed.R.Civ.P. 8(a) or 9(b), it would be subject to dismissal. Plaintiffs claim that because their amended complaint was not dismissed *sua sponte* by this Court upon its filing, it satisfies the requirements of Fed.R.Civ.P. 12(b)(6) and 12(h), and defendants' current arguments are barred.

In order for res judicata or collateral estoppel to have a preclusive effect, there must have been a prior judgment on the merits rendered by a court of competent jurisdiction. *See, e.g., Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d, 103 (1981) (res judicata); *Computer Associates International, Inc. v. Altai, Inc.,* 126 F.3d 365, 371 (2d Cir.1997) (res judicata and collateral estoppel), *cert. denied,* —— U.S. ——, 118 S.Ct. 1676, 140 L.Ed.2d 814 (1998). As a dismissal without prejudice does not operate as an adjudication on the merits, the doctrines of res judicata and collateral estoppel do not apply here. *See, e.g., Ahler v. City of New York,* No. 93 Civ. 0056(SS), 1993 WL 362404, *2 (S.D.N.Y. Sept. 13, 1993). The arguments raised by defendants are thus not barred by res judicata and collateral estoppel.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. The Clerk of the Court is directed to enter judgment for defendant on plaintiffs' claims as follows: Count I—claims asserted under 42 U.S.C. § 1985(2); Count II—all; Count IV—all; Count V—claims asserted under 42 U.S.C. §§ 1983, 1985; Count VI—pendent state claims for conspiracy, fraud, abuse of process, and malicious prosecution; Count X—all. In addition, summary judgment is granted to defendants with respect to the claims against Ronald Blackwood, the Commissioner of Police, Corporation Counsel, and the Commissioner of Public Works.

Pretrial papers shall be filed by April 23, 1999. A final pretrial conference is set for May 7, 1999 at 3:00 p.m.

**SO ORDERED.**