OPINION OF THE COURT
Alfred M. Ascione, J.
In this article 78 proceeding, the petitioner, BusTop Shelters, Inc., seeks an order (1) directing a factual hearing to review the actions of respondents, the City of New York and the Board of Estimate of the City of New York, with respect to the promulgation and adoption of the terms and conditions contained in the "Request For Proposal For Construction, Operation and Maintenance of Bus Stop Shelters in Five Boroughs” (RFP); (2) a preliminary injunction enjoining respondents from proceeding with said RFP, suspending the force and effect of all terms and conditions contained therein, and enjoining the award of any franchisees) for the construction and/or maintenance of bus stop shelters within the City of New York; and (3) after the hearing, annulling the actions of the respondent Board of Estimate as to the RFP as arbitrary, capricious and unreasonable, and directing respondents to promulgate the RFP so that its terms and conditions bear a reasonable relationship to respondents’ desire to obtain a franchisee who will faithfully perform the terms and conditions of the proposed contract.
The petition is dismissed and the request for a preliminary injunction is denied.
By resolution of the Board of Estimate, adopted May 8, 1975, petitioner was granted an interim franchise for a three-year experimental period by the Board of Estimate to erect and install not less than 900 shelters at bus stops in the Boroughs of Manhattan and The Bronx, and to display advertising material thereon. By further resolution, adopted on April 8, 1976 by the Board of Estimate, the interim period was to terminate September 26, 1978.
By its original petition to the Board of Estimate, dated April 1, 1974, petitioner had sought a long-term franchise. Instead, the Board of Estimate granted the interim franchise without provisions for the renewal or éxtension thereof, and hearings on BusTop’s petition for a contract granting a long-term franchise of 20 years were continued from time to time and have not been held, though the terms of the proposed contract were reported to the board by the director of franchises and *200 were ordered set forth in the minutes of the Board of Estimate of October 20, 1977.
It appears that while the matter has been pending before the Board of Estimate, other applicants have petitioned the board for bus stop shelter franchises. By the time the proposed contract was presented to the board, additional petitions had already been submitted, offering respondents better terms than those contained in the proposed contract.
Respondents point out that the terms of the interim franchise and the proposed contract for a long-term franchise, such as the amount of the security required of petitioner ($50,000), the number of shelters to be constructed, and the minimum compensation to be paid the city (5% of the advertising revenues), were the best that petitioner was willing to offer. At that time, petitioner was the sole operator of bus stop shelters.
Respondents concede that petitioner’s installations of bus stop shelters and the publicity it received, stimulated the advertising industry’s interest in these shelters. Further, there was public interest in other boroughs for shelters in those communities. (Petitioner was limited to The Bronx and Manhattan).
Under these circumstances, respondents assert, it was determined by the Bureau of Franchises, as approved by the Board of Estimate by resolution adopted May 25, 1978, "That the Director of Franchises shall proceed to advertise for and solicit proposals from applicants in accord with the Proposed Form of Contract; and based upon the receipt of said proposals, the Director of Franchises shall recommend to The Board of Estimate for its approval in accord with The New York City Charter, a proposed franchise(s).”
It appears that the Bureau of Franchises directed that proposals be submitted on August 1, 1978. Four proposals were submitted and this court is advised that the Board of Estimate has accepted one such proposal, not petitioner’s.
It is important to note that the RFP increases substantially the security requirements of applicants, the number of shelters to be constructed and the city’s share of advertising revenues, from 5% to at least 12%.
The "Request For Proposals” (RFP) and the "Proposed Form of Contract” approved by the Board of Estimate, are at the heart of this controversy. Petitioner contends that the terms *201 of the RFP contain "extraordinary requirements” for applicants and, based upon their experience, "the terms of the present R.F.P. are not only unreasonable but unworkable”. It is claimed that these requirements were far more financially burdensome than those found previously acceptable by the Board of Estimate.
Petitioner alleges that said actions "resulted from a desire on the part of the Comptroller’s Office to construct a sweetheart contract for a competitor company of BusTop which the Comptroller knew could easily meet such enormously inflated security demands. BusTop, on the other hand, although a financially sound company, did not have similar enormous capital reserves.” It is contended that the comptroller knew petitioner’s financial condition from its books and records, to which the comptroller had access, including quarterly financial statements, filed by petitioner.
Petitioner objects to the security requirements of the RFP in that it requires (1) an earnest money deposit of $150,000 just to make a city-wide bid; (2) a franchise deposit of $628,000 for the entire period of the franchise to guarantee performance; and (3) a performance bond of $3,000 for each proposed shelter to be constructed (2,150 shelters, or a bond of $6,450,000, making in all a total of $7,228,000, for security purposes.
By contrast, the interim franchise required a deposit of $50,000 for security, as did petitioner’s proposed contract for a long-term extension.
Finally, petitioner asserts that the RFP construction timetable is unreasonable. It calls for 2,150 shelters to be constructed in two and a half years (25% the first year, 66% by the end of the second year and 100% within two and a half years).
Again, by contrast, the interim franchise called for 900 shelters in three years, which petitioner claims it was unavoidably unable to meet due to administrative problems within city agencies and Community Planning Boards. Petitioner’s proposed contract required 500 shelters in Manhattan, 250 in The Bronx, 200 in Brooklyn, 200 in Queens and 200 in Staten Island, for a total of 1,350, to be completed in three years.
It is claimed by petitioner that respondents undertook no studies to warrant the security and construction terms of the RFP, which petitioner says was an arbitrary and capricious *202 act without sufficient factual basis. Lastly, petitioner asserts that if a preliminary injunction is not issued it will suffer irreparable injury.
Respondents urge that an article 78 proceeding is inappropriate to review the actions of the Board of Estimate, since such a proceeding does not lie to review legislative acts such as the board’s decision establishing terms and conditions in granting a franchise, citing Loos v City of New York (257 App Div 219, 223) and Matter of Merced v Fisher (38 NY2d 557, 559). Respondents are in error.
Firstly, the New York City Charter has been revised and modified several times since the Loos case (2d Dept., 1939) and whereas at one time the Board of Estimate had legislative functions, this is no longer true. Today, the city council alone is "vested with the legislative power of the city and shall be the local legislative body of the city.” (New York City Charter, ch 2, § 21.) "[T]he chief functions today of the Board in this city * * * are merely, in effect, to be the caretaker of the city’s property” (Bergerman v Lindsay, 58 Misc 2d 1013, 1015-1016, which contains a valuable review of the historical development of the Board of Estimate).
The New York City Charter gives the Board of Estimate control of the streets and the exclusive power in behalf of the city to grant franchises with respect thereto. (New York City Charter, ch 14, § 361 et seq.)
In order to give legal effect to actions by the Board of Estimate, its determinations must be based on facts. (Matter of Kayfield Constr. Corp. v Morris, 14 AD2d 769.) An article 78 proceeding is an appropriate remedy to seek review of a resolution of the Board of Estimate claimed to be arbitrary and capricious. (Matter of Kayfield Constr. Corp. v Morris, 15 AD2d 373, same case.)
In Matter of Merced (supra), the Court of Appeals, in its Per Curiam decision, denied a motion to vacate a prior order of that court transferring the matter to the Appellate Division, since there was a procedural question whether an article 78 proceeding was proper to challenge the constitutionality of a statute. It held that an article 78 proceeding does not lie to review a legislative enactment. (Matter of Merced, supra, p 559.) Thus, as discussed above, that case is not controlling here.
In this case, the burden is not upon the Board of Estimate *203 to justify its action but, rather, on petitioner to show arbitrariness and capriciousness and that the board’s action was without reasonable foundation (Matter of Kayfield Constr., supra, p 379).
It seems apparent to this court that there is a reasonable basis for the board’s actions in adopting the RFP under attack. Though it does not appear that competitive bidding is required in granting a franchise, since the award of the franchise does not involve the payment or expenditure of funds out of the city treasury (cf. bidding requirements under General Municipal Law, § 103; and New York City Charter, ch 13, Contracts and Purchases, § 341), nevertheless, in view of the active interest in the bus stop shelter program which subsequently developed, it was reasonably determined to seek proposals from all those interested based upon the terms and conditions formulated by the Bureau of Franchises, a bureau of the board (see New York City Charter, §68), and adopted by the Board of Estimate.
There is a basic contradiction in petitioner’s position. On the one hand, it sought a franchise without competitive bidding claiming, in effect, that the city owed it to them on their terms because they had pioneered the bus stop shelter program. At the same time, petitioner claims that the RFP, which improves the city’s position considerably, both financially and in terms of the number of shelters, and provides for competitive bidding, is unreasonable because they cannot meet its conditions and it does not provide for competitive bidding, in fact.
It is clear that the interim franchise granted to petitioner was for an experimental period of three years only. Thereafter, the continuation of the program was a new deal, with all the risks attendant thereto to petitioner. The Board of Estimate cannot be foreclosed from acting in the city’s interest, as is its duty, to obtain the best terms possible for the city. In this situation, the board is seeking to award the franchise to the highest responsible bidder, not the lowest, as would be true in a contract involving the expenditure of funds by the city. It satisfactorily appears to this court that the board acted rationally and reasonable under all the circumstances and this court may not substitute its judgment for respondents’.
Whether, in the long run, petitioner’s claim that the construction timetable is unworkable and unrealistic, proves correct or not, the city is fully protected by the RFP’s security *204 requirements and which have to be met by the successful bidder.
There being no demonstration by petitioner of any property right or entitlement by petitioner to an extension of its franchise, the motion for a preliminary injunction is denied. Settle judgment dismissing the petition.