OPINION OF THE COURT
Wachtler, J.
The central issue on these cross appeals is whether a municipality violated a competitive bidding statute (General Municipal Law, § 103), when it did not offer competí-• tors of the New York Telephone Company the opportunity to bid for the right to provide the municipality with certain telephone terminal systems. The petitioners, Gary Exley and 753 Harry L. Drive Corp., argue that the modern tariff system under which the equipment was to be provided rendered the transaction the functional equivalent of a sale, and brought it within the strictures of the competitive bidding statute (General Municipal Law, § 103). The Appellate Division agreed, and declared that the agreement to install New York Telephone’s equipment was void.
There was a time when New York Telephone operated as a regulated enterprise completely outside the competí *430 tive pressures of the marketplace. Since 1968, however, the Federal Communications Commission has permitted competition in a significant area of the field, the terminal interconnect industry, by allowing subscribers of telephone services to purchase and install their own phone terminal equipment (Matter of Use of Carterfone Device in Message Toll Tel. Serv., 13 FCC2d 420). This in turn put the regulated telephone companies in the position of facing a probable loss of a significant portion of the terminal equipment market.
New York Telephone sought to counteract this loss by new marketing strategies, but for reasons which need not concern us here, at the time of this bidding it had not yet been permitted by the Public Service Commission (PSC) to sell its equipment to the public. Instead, it participated in the development of an alternate rate system called the “two tier” rate, which has as a basic feature a separation of the rate into two parts, one to cover the cost of equipment actually provided, and the other to cover the recurring charges tied to the operation of the entire phone system.
Under traditional phone rate systems the subscriber pays a single monthly charge, subject to periodic increases, for so long as he enjoys the services. By way of distinction, the two-tier system selected by the municipality here incorporates and “A” rate, which is fixed* at the time the equipment is provided, and which is paid in a lump sum or over a definite term of months selected by the subscriber. At the end of the “A” term the customer can continue using the equipment by paying only the “B” rate, and if he returns the equipment he receives a credit for its remaining useful life or salvage value. The customer who accepts the two-tier system agrees to pay the full amount of the “A” rate even if he cancels the service. It is conceded that the title to the equipment remains at all times in New York Telephone.
It is clear that the two-tier system is tailored to the needs of each particular subscriber, and generally it results in a lower rate than the traditional system. However, because it was designed in this way to compete with sellers of terminal *431 equipment, it is not surprising that the two-tier system takes on some of the attributes of a sale. It is for this reason that respondents argue that the agreement of the municipality to use the two-tier system was within the scope of section 103 of the General Municipal Law.
At the time New York Telephone agreed to supply the system in question, that statute read in pertinent part: “1. Except as otherwise expressly provided * * * all contracts for public work involving an expenditure of more than thirty-five hundred dollars and all purchase contracts involving an expenditure of more than fifteen hundred dollars, shall be awarded * * * to the lowest responsible bidder furnishing the required security after advertisement for sealed bids in the manner provided by this section”.
By its own terms, the statute applies only to contracts for public work or purchase contracts, and makes no mention of leases or rental type arrangements. At the outset, we note our agreement with Special Term that the acquisition of the phone system cannot without contextual strain be classified as a public work contract. As Special Term noted, the installation of the system was not a substantial aspect of the contract, and the contract did not otherwise involve performance of services or specialized skills (Opns State Comp No. 79-762). However, the hybrid nature of the two-tier rate at least arguably brings the transaction within the meaning of the term “purchase contracts”.
In Matter of Signacon Controls v Mulroy (32 NY2d 410) this court reaffirmed the importance of competitive bidding statutes to safeguard the public interest, in that they invite competition, and discourage favoritism, improvidence, extravagance, fraud and corruption (10 McQuillin, Municipal Corporations, § 29.29). Nonetheless, although section 103 must be read in conjunction with this underlying purpose (see General Municipal Law, § 100-a) it also must be recognized that competitive bidding statutes constitute a substantial imposition on the activities of municipal governments. It is important, therefore, that we do not extend the coverage of the statute into areas unintended by the Legislature.
It has long been accepted that a municipality may lease equipment without complying with the competitive bidding *432 requirements of section 103 of the General Municipal Law (see, e.g., Opns St Comp Nos. 78-519, 78-443). However, it is equally well recognized that one cannot avoid the effect of section 103 merely by casting an agreement which is truly a sale in terms of a lease (Opns St Comp No. 78-519; 18 Opns St Comp, 1962, p 176). The Appellate Division opined that this is exactly the nature of the transaction in this case. We disagree.
Without doubt neither the term “lease” nor the term “sale” can be absolute in meaning, and in the innumerable variations of contracts either a lease or a sale can possess attributes of one or the other. However, it is the total character of the arrangement which controls, and in making this assessment it is important to note that title for all equipment to be provided under the two-tier tariff always remains in the New York Telephone Company. The Appellate Division deemed this insignificant because in its view the useful life of the equipment was expended at the end of the “A” rate term, and, supposedly, the equipment over which New York Telephone retained ownership would then have been of little value. In support of this view, the Appellate Division employed as a useful life the term of years set forth in the Local Finance Law for telephone systems in general (see Local Finance Law, § 11.00, subd a, par 25). We believe this reliance on the Local Finance Law inappropriate because the useful life to which that statute refers does not necessarily have any close relationship with the equipment actually contemplated by the contract in this case.
It is also significant that the term of the “A” rate need not correspond to the useful life, because that term can be selected from various alternatives by the subscriber. This problem was answered below by noting that a subscriber who returns equipment receives a credit for the remaining useful life or salvage value. However, this credit is a fixed amount for the type of equipment, and does not have any direct relationship to the specific equipment involved.
Finally, we find it significant that New York Telephone, in addition to retaining title to the equipment, also assumes the risk of loss due to events not within the customer’s con *433 trol, and also the obligation to service and repair the equipment. Moreover, there is not the slightest hint of subterfuge in this arrangement. On the whole, we believe that the two-tier arrangement is in the nature of a true lease (cf. Albion Ind. Center v Town of Albion, 62 AD2d 478) and therefore is not within the ambit of the competitive bidding statute.
In view of the disposition of this appeal, we affirm the denial by the Appellate Division of attorney’s fees to the petitioners. The order of the Appellate Division should be modified, with costs to New York Telephone Company to the extent of dismissing the petition, and, as so modified, affirmed.
Chief Judge Cooke and Judges Jasen, Jones and Meyer concur; Judges Gabrielli and Fuchsberg taking no part.
Order modified, with costs to New York Telephone Company, in accordance with the opinion herein, and, as so modified, affirmed.

 The PSC, however, may alter the rate in narrow circumstances.