OPINION OF THE COURT
 

 Wachtler, J.
 

 Subdivision 1 of section 1209 of the Public Authorities Law provides that a contract for public work in excess of a specified cost may be entered into by the New York City Transit Authority (Authority) only after competitive bidding procedures have been followed. This appeal raises the question whether a license agreement, having as its predominant focus the use of real property and the operation of a specified business thereon, is subject to the competitive bidding requirements by reason of the agreement’s provision that the licensee must construct certain improvements and rehabilitate or repair existing facilities in connection with its use of the property.
 

 In the latter part of 1982, the Authority advertised its intention to seek qualified persons or firms to offer proposals for a long-term license to operate newsstands in the New York City subway system. Interested parties were invited to submit proposals. Those who qualified, in terms of their financial and business ability to undertake the project, would be permitted to submit bids for the license. Several firms were found to be qualified, including petitioner Citiwide News, Inc. (Citiwide), and respondent Ka-poor Brothers, Inc. (Kapoor).
 

 Thereafter, the Authority issued to each of the qualified firms a formal invitation to submit bids. The Request for Proposals (RFP), in addition to setting forth the requirements for the operation and maintenance of the newsstands, details the obligations to be undertaken by the
 
 *469
 
 proposer in connection with the rehabilitation of existing newsstands and the construction of additional facilities. The RFP made clear that the Authority believed that it had no obligation to offer the license through a competitive bid process. Thus, the contract would not necessarily be awarded to the highest bidder; rather, the proposals submitted would be used as a basis for negotiations. Proposals were to be evaluated on the basis of several criteria, including: (1) compensation; (2) the proposer’s ability to operate the newsstands in accordance with professional business management standards; and (3) the proposer’s plan for construction and rehabilitation of the newsstands. Proposers were permitted to submit a bid for the license on the basis of either a 10- or 15-year term.
 

 Citiwide submitted a proposal for a term of 10 years, offering to compensate the Authority for the license in the amount of $22,321,000. Kapoor’s proposal, based upon a 15-year term, provided for payments to the Authority of approximately $49,292,000. The Authority determined that Kapoor was the preferred proposer, as it had rated considerably higher than the others in all categories except compensation. Following negotiations, the Authority and Kapoor reached agreement, which included payments to the Authority in the amount of $62,210,000 (subject to potential downward adjustments), and the “Master License to Install, Operate, and Maintain Newsstands at Approved Locations on the New York City Transit Authority Rapid Transit System” was executed accordingly.
 

 In addition to setting forth such provisions as the term of the license, the compensation to be paid, and the licensee’s obligations with respect to the maintenance of the property, the master license regulates the conduct of business at the subway station newsstands in some detail. Thus, the license details the items that may be sold at the newsstands and those that must be provided, the reports and records to be maintained, management and supervision requirements, the licensee’s obligations with respect to utilities, insurance, safety and sanitary conditions, and sets forth a sublicense agreement to be used should a limited number of the newsstands be subleased pursuant to the terms of the agreement. The master license also
 
 *470
 
 contains the parties’ agreement concerning the required construction of new newsstands, the estimated cost of which is $2 million. Pursuant to the agreement, all newsstands, as well as improvements to existing stands, become the property of the Authority when made.
 

 Citiwide commenced this article 78 proceeding, naming the Authority and Kapoor as respondents, challenging the validity of the master license upon the ground that the Authority failed to follow competitive bidding procedures. Special Term dismissed the petition, holding that the award of the master license did not involve the expenditure of public money and thus was not subject to public bidding requirements. The Appellate Division reversed, by a divided court, holding that the construction aspect of the license involved an indirect expenditure of public funds for a public work, requiring that the contract be publicly bid. We now reverse. Notwithstanding the fact that an indirect expenditure of public money is involved, the Authority was not required to follow competitive bidding procedures before making the contract, inasmuch as the “total character of the arrangement” is clearly that of a license agreement for the maintenance and operation of newsstands and not that of a “contract for public work”.
 

 The public bidding requirements applicable to the Authority are found in section 1209 of the Public Authorities Law. Subdivision 1 of that section provides, in part: “Any contract for public work, except where there is an emergency involving danger to life or property, the estimated cost of which exceeds twenty thousand dollars shall be made by the authority only upon public letting founded on sealed bids”. Neither this statute nor. that applicable to political subdivisions (General Municipal Law, § 103, subd 1), offers any definition of “contract for public work” or otherwise indicates the specific nature of the contracts falling within the public bidding requirement. It is clear, however, that a contract in the nature of a lease by a public entity as lessor or by which a franchise or license is granted need not, generally, be subjected to the competitive bidding process, for such a contract does not ordinarily involve an expenditure of public money
 
 (e.g.,BusTop Shelters v City of New York,
 
 99 Misc 2d 198, 203; 1982 Opns St
 
 *471
 
 Comp No. 82-237). The issue in the present case is whether the Authority’s license agreement must be considered a contract for public work insofar as it requires the construction of new facilities in connection with the licensee’s undertaking to operate the newsstands.
 

 We note, first, our agreement with the Appellate Division that the license contemplates what must be viewed as an indirect expenditure of public money. As we made clear in
 
 Matter of Signacon Controls v Mulroy
 
 (32 NY2d 410, 416): “A contract which provides for a lesser income to a governmental unit than a competing contract might provide, is an ‘expenditure’ within the meaning of [the competitive bidding statute]”. In that case we expressed concern that public officials not be permitted to do indirectly what they may not do directly, and that the salutary purposes of the public bidding statutes not be evaded by merely altering the nature of an arrangement to bring it technically outside the scope of the requirements. In the present case, the Authority required as part of the arrangement that the licensee agree to undertake certain improvements in connection with its operation under the license. Certainly, this obligation, requiring an expenditure by the licensee of some $2 million, had an impact upon the amount of compensation the licensee was willing to pay the Authority. That an expenditure of public funds, direct or indirect, exists, however, is not sufficient by itself to trigger the requirements of section 1209; we must also ascertain whether the arrangement involves a “contract for public work” to which the statute is applicable.
 

 It is not, of course, always clear whether the Legislature intended its various competitive bidding statutes to be applicable to given transactions. We were recently confronted with such a question in
 
 Matter of Exley v Village of Endicott
 
 (51 NY2d 426). There, a municipality had entered into an arrangement with New York Telephone Company for the provision of certain telephone terminal systems. The agreement had attributes of both a lease and a sale. In the latter, the transaction was subject to public bidding as a “purchase contract” (General Municipal Law, § 103, subd 1; see, also, Public Authorities Law, § 1209, subd 2). Given what we termed the “hybrid nature” of the transaction, we
 
 *472
 
 deemed it necessary to examine the (p 432) “total character of the arrangement”. Finding significant the facts that title to the telephone equipment never passed to the municipality, that the telephone company assumed the risk of loss for certain events beyond the customer’s control and assumed the obligation to service the equipment, and that there was no hint of subterfuge in the arrangement, we concluded that the transaction was in the nature of a true lease and thus was not within the scope of the competitive bidding statute.
 

 We believe that a similar approach must be taken to the problem posed by the matter now before us. Although the same type of ambiguity present in
 
 Exley
 
 does not affect the license here, we are faced with a similar difficulty in ascertaining the reach of the public bidding statute. In this connection, we have recognized the importance of ensuring full compliance with such statutes, which have as their aims the elimination of extravagance and improvidence, as well as prevention of the opportunity for fraud, favoritism or corruption in the awarding of public contracts.
 
 (Matter of Signacon Controls v Mulroy,
 
 32 NY2d 410, 414, 415,
 
 supra).
 
 Balanced against this important policy, however, is the equally important recognition that competitive bidding requirements impose a substantial restriction upon the activities of public entities and must be extended no further than reasonably contemplated by the Legislature
 
 (Matter of Exley v Village of Endicott,
 
 51 NY2d 426, 431,
 
 supra).
 
 As in
 
 Exley,
 
 we therefore deem it appropriate to look to the “total character of the arrangement” in determining whether the master license, having attributes of both a typical license and a public work contract, falls within the scope of the competitive bidding statute.
 

 The basic structure of the license agreement is directed to providing that in return for payment to the Authority, Kapoor is permitted to use the Authority’s property to conduct a specified business. Intrinsic to the operation of this license is the need for adequate facilities to carry out the proposed business. The Authority’s purpose in entering into this arrangement is to raise substantial revenues, while providing a convenience for subway passengers. The purpose is clearly not to construct or acquire title to the
 
 *473
 
 newsstands. Indeed, the physical structures have no utility separate and distinct from the licensing aspect of the arrangement. Given the potential difficulties faced by the Authority in carrying out its subway station modernization program and the need to coordinate other proposed construction with the program, the only practical approach was to have the maintenance, operation and construction aspects of the newsstand project carried out by the same entity.
 

 Moreover, the determination of who has title to the improvements and new construction, which may be critical when the question presented is whether a given transaction is a lease or a purchase (see
 
 Matter of Eodey v Village of Endicott,
 
 51 NY2d 426,
 
 supra),
 
 does not take on the same importance where a license to use real property is involved. As noted above, it is surely not the purpose of the arrangement that the Authority acquire title to these facilities. The ownership of the newsstands appears to be of only incidental benefit to the Authority. Indeed, it is not at all inconsistent with the character of a license that the Authority would provide for the acquisition of title to improvements made to its real property during the term of the license. In any event, this factor is insufficient, by itself, to alter the essential character of the transaction. We conclude that an examination of this arrangement reveals its total character as a license agreement, the focus and purpose of which are to provide for the maintenance and operation of newsstands in the subway system. That the agreement’s proper performance requires that certain Authority facilities be rehabilitated and that new facilities be constructed on Authority property does not alter its essential character from that of a license agreement into a contract for public work. Thus, the master license cannot be said to fall within the scope of section 1209 of the Public Authorities Law, and competitive bidding procedures were not mandated.
 

 Accordingly, the order of the Appellate Division should be reversed and the petition dismissed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Jones, Meyer, Simons and Kaye concur.
 

 Order reversed, etc.