**Annibal CUBAN et alia, Plaintiffs,**

v.

**KAPOOR BROTHERS, INC. et alia, Defendants.**

**No. CV–83–4954.**

United States District Court, E.D. New York.

Jan. 30, 1986.

John C. Klotz, New York City, for plaintiffs.

Penn, Ferrara, Adler & Eichel, New York City, for Kapoor Bros. defendants.

General Counsel's Office by Kathleen Walsh, New York City, for MTA and NYC Transit Authority.

Kazdin, Weinstein & Bier, P.C. by David J. Weinstein, New York City, for defendants Modi, Patels, Chudasoma and Subway News.

SIFTON, District Judge.

Plaintiffs, newsstand operators at various New York City subway stations, allege injury due to violations of the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964(c); violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b–5 of the Securities Exchange Commission, and a conspiracy to deprive plaintiff's of their civil rights under 42 U.S.C. § 1985(2).[1] Plaintiffs allege a scheme by defendants Kapoor Brothers, Inc., Bhawnesh Kapoor and Suresh Kapoor (collectively, the "Kapoors"), the Metropolitan Transit Authority ("MTA"), and the New York City Transit Authority ("NYCTA") (collectively the

---

1. Counts one, five and six allege RICO claims; count three alleges the federal securities claim; count four asserts the section 1985(2) conspiracy claim; and counts two and seven assert pendent state claims under New York State's Business Corporation Law section 626 and for conversion, respectively.

"city defendants"), and directors of the Subway News Corporation ("SNC defendants") to deprive plaintiffs of their newsstands. The matter is before the Court on motions of the Kapoors, the city defendants and SNC defendants for dismissal of the complaint,[2] and on the subsequently filed motion of plaintiffs for leave to file a second amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure seeking damages and injunctive relief under the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, 3; and the Clayton Act, 15 U.S.C. §§ 15, 26. City defendants also seek an award of attorneys' fees pursuant to Rule 11.

The essentially undisputed facts have been set forth in this Court's Memorandum and Order dated September 6, 1984, but are restated herein for the sake of clarity. In late 1982, the MTA issued a request for proposals for the operation of 142 existing newsstands in the New York City subway system, as well as for the construction and operations of newsstands at certain new locations. Up to that time, the newsstands had been licensed to Ancorp National Service Corp., which sublicensed its individual stands to others. In response to the request for proposals, there were several bidders. Among them were Subway Newsdealers Corporation, Kapoor Brothers, Inc., and Citiwide News, Inc. It appears that SNC was formed solely for the purpose of bidding for the master license. Its 90 shareholders were persons who had previously operated newsstands under subleases from Ancorp.

On April 15, 1983, the MTA awarded the master license to Kapoor. In May 1983 SNC and Citiwide challenged the propriety and legality of the procedures by which the MTA awarded the master license to Kapoor in separate Article 78 proceedings in New York Supreme Court, New York County. *In the Matter of the Application of Subway News Dealers Corporation*, Index No. 12099/83, and *In the Matter of the Appli-*

*cation of Citiwide News, Inc.*, Index No. 14469/83. These proceedings sought the cancellation of the award of the master license to Kapoor, challenging the procedural propriety of the grant of the license to Kapoor, and Kapoor's qualifications to be the recipient of the license award. SNC asserted that portions of the MTA master license which required the expenditure of approximately $2.5 million by the licensee for improvements and reconstruction of the existing subway newsstands constituted "an expenditure" requiring the use of the competitive bidding procedures provided under the New York Public Authorities Law. Additionally, numerous alleged improprieties by Kapoor and the MTA concerning the financing and negotiation of the master lease were asserted.

During May 1983, the same month during which two state actions were brought, SNC filed a suit in the United States District Court, Southern District of New York, seeking, *inter alia*, a preliminary injunction enjoining the implementation of the master license award to Kapoor and permitting SNC's shareholders to continue operating their newsstands. The MTA, NYC-TA, and Kapoor Brothers, Inc. were named as defendants.

In that suit, SNC contended that, by failing to act on plaintiffs' application for certification of SNC as a "Minority Business Enterprise" ("MBE"), the MTA and NYC-TA failed to comply with Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.;* Section 19 of the Urban Mass Transportation Act of 1964, 49 U.S.C. § 1615; and the Department of Transportation ("DOT") regulations promulgated thereunder governing participation of MBE's in DOT-funded programs. Judge Lasker denied the requested injunction on May 25, 1983. *See Subway Newsdealers Corporation v. Metropolitan Transportation Authority*, 563 F.Supp. 319 (S.D.N.Y. 1983). The action was discontinued "with prejudice" on July 19, 1983.

---

**2.** Kapoor and SNC defendants have submitted affidavits and documents and, therefore, alternatively move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

SNC was more successful in the state proceeding in which a preliminary injunction was obtained which enjoined the operation of Kapoor-MTA contract. Thereafter, SNC agreed to the lifting of the injunction in exchange for a settlement agreement which permitted the shareholders of SNC to retain their respective newsstands under agreed terms and conditions. Fifteen SNC members who are plaintiffs herein signed general releases pursuant to the settlement agreement in May 1983.

A special meeting of the shareholders of SNC was held on June 24, 1983, for the purpose of ratification of the agreement. Notice of the meeting was given on June 21. Some 70 of the 90 shareholders were present, of whom 28 objected to the calling of the meeting on short notice. At the meeting, the agreement was ratified by a margin of two votes, including ten proxy votes.

Dissatisfied with the terms of the SNC–Kapoor settlement, a dissident group of SNC shareholders (all but four of the instant plaintiffs) instituted a third Article 78 proceeding, *Patel v. SNC*, against the MTA, SNC and Kapoor Brothers seeking (1) to vacate the settlement based upon alleged improprieties in the procedure of ratification of the settlement by SNC shareholders, and (2) to revoke the award of the MTA master license to Kapoor based essentially on the substantive objections of the Kapoor-MTA agreement asserted by SNC in the original Article 78 proceeding.

The identical dissident shareholders also commenced a fourth action in state court against defendants for damages based on virtually identical allegations.

*Patel v. SNC* was settled "with prejudice" in open court on September 1, 1983, before Justice Evans. The settlement provided that the defendant SNC members would maintain their sublicenses and provided that the disposition of the Citiwide action would be binding on Kapoor if unfavorable to Kapoor, but that plaintiffs would still be entitled to the benefits of the SNC settlement with Kapoor and the MTA if the grant of the contract to Kapoor was upheld. The settlement additionally required that the dissident shareholders' damages action be discontinued with prejudice except that "nothing herein contained shall act as any type of release or settlement of the action by petitioners against such directors for personal wrongdoing" and that "within 30 days each of the petitioners herein shall deliver his general release in favor of all respondents and counsel for SNC, except that such general release shall except directors of SNC from such release from any and all personal wrongdoings claimed against them."

Finally, the settlement stated that, in the event that each petitioner does not deliver a general release to Kapoor, then at Kapoor's option this agreement shall be null and void.

On September 30, 1983, the dissident faction commenced a new proceeding, this one to set aside the September 1, 1983 stipulation, and Kapoor cross-moved for an order enforcing the terms of the stipulation. *Lalita Patel v. Subway Newsdealers Corp.*, Index No. 19114/83 (S.Ct. N.Y. Co.).

Justice Evans, on December 7, 1983, denied petitioners' motion to set aside the stipulation, concluding that it was "entered with good authority and properly presented, and reflected the understanding and agreement of the parties at that time."

Subsequently, six newsstand operators executed general releases pursuant to the stipulation. Justice Evans ordered the remaining plaintiffs be evicted "in accordance with the stipulation," though eviction was stayed pending the outcome of the *Citiwide* action.

The instant federal action was filed on November 30, 1983. On July 3, 1984, the New York Court of Appeals upheld the validity of the bidding procedures used in connection with the master license in the *Citiwide* action. *In the Matter of Citiwide News*, 62 N.Y.2d 464, 478 N.Y.S.2d 593, 467 N.E.2d 241 (1984). Accordingly, Judge Evans' stay of eviction was vacated on July 10, 1984.

The original complaint alleged that the "Kapoor Enterprise," encompassing city and SNC defendants as well, engaged in the following racketeering activity, actionable under RICO:

1. In order to bid on the MTA master license, the Kapoor Enterprise utilized funds it had obtained by means of racketeering activity, including mail fraud, in obtaining a master license for LIRR newsstands.

2. Kapoor allegedly conspired with the SNC defendants "to defraud plaintiffs of the benefits obtained for them by SNC" in the first Article 78 proceeding. In the course of executing the settlement of that suit between SNC and Kapoor, SNC and Kapoor allegedly committed various acts of mail fraud, extortion and Hobbs Act violations, 18 U.S.C. § 1951.

3. In June and July 1983, defendant Kapoor allegedly informed each of the plaintiffs that, unless they entered into a sublease with Kapoor, Kapoor would sell plaintiff's newsstands for "under the table" consideration, such actions allegedly constituting extortion and larceny by extortion, 18 U.S.C. § 1951 and NYPL § 155.05.

4. In October 1983, defendant Kapoor sent eviction notices to plaintiffs allegedly in violation of the mail fraud statute, 18 U.S.C. § 1341.

Plaintiffs each requested as damages $100,000 plus additional sums already paid to Kapoor and SNC as well as injunctive relief. Three plaintiffs who had already been evicted requested $1,000,000 each, plus injunctive relief.

Defendants answered the complaint denying the allegations. At a status conference held on March 15, 1984, certain defendants stated that they were prepared to serve a motion to dismiss the following week. Plaintiffs orally applied for leave to amend their complaint to include an allegation under 42 U.S.C. § 1985(2) and to clarify which plaintiffs were continuing the

suit. The Court permitted plaintiffs to amend their complaint, and plaintiffs subsequently did so, adding a fourth count alleging a conspiracy under 42 U.S.C. § 1985(2) and also asserting a claim under the federal securities laws, two new RICO claims, and a pendent state law claim for conversion.[3]

Defendants thereafter filed their various motions for dismissal and summary judgment on May 10, 1984. Pending oral argument on the motion to dismiss, plaintiffs sought a temporary restraining order and preliminary injunction enjoining their evictions from the newsstands they occupied without benefit of a license. On July 18, 1984, the Court orally denied the application for a temporary restraining order. Subsequently, by Memorandum and Order dated September 6, 1984, the Court denied plaintiffs' application for a preliminary injunction on the basis of plaintiffs' failure to demonstrate irreparable harm or likelihood of success on the merits because of the probable application of *res judicata* to that portion of the complaint challenging the validity of the award of the master license.

On September 19, 1984, just one day prior to oral argument on defendants' motions to dismiss, plaintiffs moved for leave to file a further amended complaint for the purpose of asserting various antitrust claims. In their moving papers, plaintiffs stated that they were withdrawing the claims pursuant to 42 U.S.C. § 1985(2) in the proposed second amended complaint and conceded that the RICO claims were insufficient under the Second Circuit's holding in *Sedima v. Imrex Co., Inc.*, 741 F.2d 482 (2d Cir.1984). The newly proposed amended complaint alleges that the term of the master license, which provides that Kapoor shall operate 60% of the newsstands and sublet no more than 40%, is a monopoly, in violation of the Sherman and Clayton Acts.

Finally, on September 17, 1984, six of the plaintiffs filed an action in Supreme Court,

---

**3.** The plaintiffs' claims other than the section 1985 cause of action were set forth in the amended complaint without leave from the Court since such broad amendment was never even discussed at the March 15, 1985 status conference.

New York County, alleging that the award of the master license to Kapoor constitutes an illegal monopolization of commerce, in violation of the Donnelly Act, the New York State Antitrust Act, N.Y. Gen. Business Law §§ 340 *et seq.* (McKinney's 1968). *Miceli v. Kapoor*, No. 21497/84 (Sup.Court, New York Co.). Pending the outcome of the Miceli case, plaintiffs applied for a temporary restraining order and preliminary injunction to prevent their evictions by Kapoor from newsstands they continue to occupy without benefit of sublicenses. On October 2, 1984, Acting New York Supreme Court Justice Bruce Wright, New York Co., Special Term, Part I, denied the temporary restraining order and application for a preliminary injunction on the grounds, *inter alia,* that plaintiffs failed to demonstrate any likelihood of success on the merits principally because of defendants' *res judicata* arguments.

Defendants contend that plaintiffs' RICO claims are barred under *res judicata* principles and also fail to state a claim for relief.[4] Defendants further argue that count four of the amended complaint, which asserts the section 1985 claims, fails to state a cause of action.

Defendants also contend that count three fails to meet the federal securities law jurisdictional requirements of alleging a sale of securities by an instrumentality of interstate commerce.

Plaintiffs initially opposed dismissal of their RICO claims arguing that the allegations satisfied the pleading requirements by alleging facts sufficient to establish all of the essential elements of a claim under the statute. Following the Second Circuit's decision in July 1984 in *Sedima, supra,* plaintiffs conceded in their motion papers seeking leave to file a second amended complaint that the RICO claims were insufficient under the then controlling law in

this Circuit. Although plaintiffs have not supplemented their papers since the Supreme Court's recent reversal of the Second Circuit's *Sedima* decision, *Sedima v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), no doubt they again rely on their pre-*Sedima* brief to argue that their complaint sufficiently pleads RICO claims. Plaintiffs also contend that none of the causes of action in their complaint are barred by either alleged releases afforded defendants or the doctrines of *res judicata.* Plaintiffs present no response to defendants' arguments urging dismissal of the section 1985(2) conspiracy claim and do not assert such a claim in their proposed second amended complaint. Plaintiffs also do not attempt to rebut SNC defendants' arguments in favor of dismissal of count three, the federal securities law claim.[5]

Instead, plaintiffs have moved for leave to assert various antitrust claims under the Sherman and Clayton Acts in a new proposed amended complaint.

### DISCUSSION

It is undisputed that SNC filed an action in federal court seeking invalidation of the master license awarded to Kapoor on the ground that the award failed to comply with two federal statutes, 42 U.S.C. §§ 2000d *et seq.,* and 49 U.S.C. § 1615. *Subway Newsdealers Corp. v. MTA,* 563 F.Supp. 319 (S.D.N.Y.1983). It is also undisputed that Judge Lasker in that action denied plaintiff SNC's request for an injunction halting evictions by Kapoor of newsdealer-members of SNC and that the action was discontinued "with prejudice" on July 19, 1984. In light of these facts, this Court in its earlier Memorandum and Order denying a preliminary injunction referred to the applicability of *res judicata* principles and stated, "in all likelihood that portion of the complaint challenging the

---

**4.** Kapoor argues that the RICO claims fail to state a claim not only under the *Sedima* holding of the Second Circuit, which has been recently reversed by the Supreme Court, but because of plaintiffs' failure to allege a "pattern of racketeering" as defined by the statute. See 18 U.S.C. § 1962(a)–(c).

**5.** SNC defendants do not address the other federal cause of action, count four, which alleges the section 1985(2) conspiracy.

validity of the master license award will be barred by virtue of plaintiffs' failure to raise their RICO claims before Judge Lasker." I address that issue dispositively now.

■ In *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980), the Supreme Court stated that "[u]nder *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." A dismissal of a cause of action with prejudice amounts to a final judgment on the merits for *res judicata* purposes. *Cullen v. New York State Civil Service Commission*, 435 F.Supp. 546, 554 (E.D.N.Y), *appeal dismissed*, 566 F.2d 846 (2d Cir.1977); 1B Moore's *Federal Practice*, ¶ 0.409, at 1008, 1009.

■ In the instant case, plaintiffs' RICO claim in count one was, at least in part,[6] litigated in the prior federal action before Judge Lasker. Paragraphs 14–32 of count one complain that the master license was illegally awarded to Kapoor. The identical allegation was the principal issue in the prior federal SNC action. The entire RICO claim certainly could have been raised and is, therefore, barred as the foundation for the instant RICO action under the *res judicata* principles stated in *McCurry*. "A shift in legal theories or a new or different ground for the relief sought does not of itself work magic and dissolve the defense of *res judicata*.... [A] plaintiff cannot escape the effect of the adverse determination by clothing the claim in different garb." *Garr v. Lerner*, 528 F.Supp. 630, 632–33 (S.D.N.Y.1981).

■ The only question potentially precluding application of *res judicata* principles to the RICO claim concerning city defendants' award of the master license to Kapoor is whether all plaintiffs in the present action were either parties or privies of SNC, the plaintiff in the case before Judge Lasker. The facts before the Court compel the conclusion that all plaintiffs in the instant action are bound by the judgment in the prior federal case. All the present plaintiffs were newsstand operators functioning as sublicensees of Ancorp National Service Corp, which held the master license through 1982. When Ancorp's license was not renewed, plaintiffs' sublicenses were necessarily terminated. All plaintiffs, with the possible exception of Rohit Shah and Juan Perez, became shareholders in SNC, a corporation developed for the purpose of either obtaining or contesting the legality of the master license award and maintaining plaintiffs' possession of their newsstands. As such, there was privity between SNC and the shareholders. *Green v. ABC*, 572 F.2d 628 (8th Cir.1978). Messrs. Shah and Perez, who joined but were not named plaintiffs in the SNC suit, were either SNC shareholders or were individuals having identical interests to those pursued by the shareholders of SNC. If the latter, *res judicata* nevertheless applies since Messrs. Shah and Perez had a substantial identity with SNC in the prior litigation—"[their] interests were represented in the prior action." *Grossman v. Axelrod*, 466 F.Supp. 770, 775 (S.D.N.Y. 1979), *aff'd*, 646 F.2d 768 (2d Cir.1981). It is not necessary that Messrs. Shah and Perez have been named as plaintiffs in the earlier federal SNC litigation. *Expert Electric Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.1977). Therefore, plaintiff's count one, insofar as it challenges the validity of the master license award, is barred.

The other RICO allegations concerning the state court SNC settlement agreement and the eviction actions by Kapoor are also barred under the doctrine of collateral estoppel. The principal issues raised by these claims were actually litigated in the second *Patel* proceeding. As plaintiffs

---

**6.** Plaintiffs complain in paragraphs 33–49 of count one that the settlement which ended SNC's state court suit challenging the award of the master license was made through a scheme to defraud the SNC shareholders. Plaintiffs complain in paragraphs 50–60 of count one that

Kapoor's efforts to evict plaintiffs constituted extortion. These two RICO allegations were not and could not have been raised before Judge Lasker because the state court stipulations of settlement and subsequent evictions had not yet occurred.

themselves state, the first and second *Patel* proceedings were brought to "recall the meeting of the directors of SNC to revote the approval of the SNC settlement." The issue in the two *Patel* proceedings, therefore, was the same as that asserted in paragraphs 33–49 of the amended complaint in the instant action—the propriety of the settlement in the state court SNC case. This issue was never actually litigated in the first *Patel* suit before Justice Evans which ultimately was discontinued and culminated in the entry of a stipulation of settlement, and, therefore, the first *Patel* suit has no collateral estoppel effect. *Lawlor v. National Screen Service*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). However, the second *Patel* proceeding did result in a hearing and a specific finding that the stipulation of settlement in the state court SNC action was not improperly obtained. That finding precludes relitigation of the issue in the instant action. The amended complaint in this action, like the complaint in the second *Patel* action, asserts that the stipulation of settlement should be set aside because a shareholders' meeting was illegally convened, directors of SNC made illegal arrangements with Kapoor, and SNC directors acted with disregard for the interests of SNC shareholders. Further, Justice Evans was also apprised of and specifically addressed the same issue concerning the propriety of evictions by Kapoor raised in paragraphs 50–59 of the amended complaint in the present action. Although a timely appeal of the second *Patel* decision was apparently never perfected, plaintiffs are barred by collateral estoppel from asserting the portions of their RICO claims in count one which allege improprieties in the obtaining of the SNC stipulation of settlement and in Kapoor's eviction actions.

Having determined that all claims in plaintiffs' principal RICO cause of action, count one, are barred, counts five and six of the complaint, which seek certain supplementary damages arising from the alleged wrongful evictions, must necessarily be dismissed on the same grounds.

■ The second federal cause of action asserted by all but four of the plaintiffs is set forth in count three of the amended complaint. In that claim, plaintiffs assert that SNC defendants violated the Securities Exchange Act of 1934 and Rule 10(b)5 promulgated thereunder by making false statements in offering for sale to plaintiffs stock of SNC. SNC defendants urge that count three must be dismissed because it fails to allege facts to support the jurisdictional predicate that the mails or any other means or instrumentality of interstate commerce were used to sell the shares. Specifically, SNC defendants rely upon the affidavit of SNC's president, Kirti Modi, which states that the mails were not used in connection with the sale of SNC stock to plaintiffs.

Plaintiffs' complaint alleges in conclusory fashion that "defendant members of the SNC controlling faction made use of the mails" to carry out the specifically alleged wrongful acts that defrauded plaintiffs. The affidavit of Nitin Shah submitted by plaintiffs in opposition to the motion to dismiss states that mailings in "some instances" and phone calls to "certain other of the shareholders" out of state did occur. Those assertions are themselves conclusory and insufficient. On a motion for summary judgment, plaintiffs are required to submit affidavits demonstrating that evidence exists sufficient to support their assertions. "The possibility that a factual issue may exist will not defeat the motion, rather the party opposing summary judgment must indicate that a genuine dispute as to a material fact does exist." *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982). Plaintiffs have not satisfied this burden by submission of the Shah affidavit with its one sentence conclusory statement concerning unspecified phone calls and/or letters to unnamed other plaintiffs. Count three must be dismissed since plaintiffs have presented no genuinely disputed factual issue on the jurisdictional predicate.

The final federal cause of action asserted by all but six plaintiffs is set forth in count

36

four of the amended complaint. That claim states in pertinent part that Kapoor and the city defendants "by reason of [the acts alleged in paragraphs 1–69 of the complaint] have conspired to deter by intimidation and threat plaintiffs from attending this Court ... in violation of 42 U.S.C. § 1985(2)." Amended Complaint, ¶ 93.

It is well established that plaintiffs pursuing a claim alleging a conspiracy to deprive them of constitutional rights must set forth sufficient facts to establish the required elements, not merely vague and conclusory statements that track the statutory language. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977); *Wallace v. International Organization of Masters*, 547 F.Supp. 155, 158 (S.D.N.Y. 1982). In the instant case plaintiffs have incorporated by reference the extensive allegations of paragraphs 1–69 of their principal RICO claim. None of the facts alleged in count one, however, set forth the elements of a claim under section 1985(2). Moreover, plaintiffs in count four exclusively seek as relief the same relief sought in all their various state and federal actions—a judgment permanently enjoining defendants from removing and evicting plaintiffs from their newsstands. Amended complaint, ¶ 94. This relief is unavailable under section 1985; the statutory remedy is limited to the recovery of damages. *Mullarkey v. Borglum*, 323 F.Supp. 1218, 1228 (S.D.N.Y.1970). Finally, plaintiffs, in their two lengthy submissions to the Court, offer no rebuttal to defendants' arguments in favor of dismissal and, in fact, never even address the section 1985(2) claim. Plaintiffs also have dropped the section 1985(2) claim from their proposed second amended complaint. For all the above reasons, count four is dismissed.

Because of all plaintiffs' federal claims, as discussed above, are dismissed, the remaining counts two and seven, which assert pendent state claims, no longer have a jurisdictional basis in federal court and must also be dismissed. *United States v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

The remaining issue is whether plaintiffs should be accorded leave pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to file their proposed new amended complaint alleging various antitrust claims. Although leave to amend is liberally granted, such an application may be denied on any of the following grounds:

"Undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing parties by virtue of the allowance of the amendment, futility of the amendment, etc...."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). While I believe that leave to amend could properly be denied in this case due to plaintiffs' undue delay and bad faith and resulting prejudice to defendants,[7] I do not reach such issues. As a preliminary matter, I find that it would be futile to permit amendment because the antitrust causes of action are barred for the same *res judicata* reasons set forth above regarding the RICO claims. Plaintiff cannot be permitted to assert a new legal theory which merely cloaks their already-litigated claims in "different garb." *Garr v. Lerner, supra*, 528 F.Supp. at 632–33. All litigation must have an end; the issues underlying

7. This action was filed on November 30, 1983. Plaintiffs requested and were granted leave to amend their initial complaint in April 1984. In their amended complaint, plaintiffs did not assert antitrust claims. Plaintiffs raised the antitrust claims by motion filed one day before the return date of defendants' motions to dismiss the amended complaint and following plaintiffs' recognition that their RICO claims were "a dead letter" under then-controlling law of the Second Circuit, as expressed in *Sedima*. The endless litany of lawsuits brought by plaintiffs seeking the same relief sought herein preclude any argument by plaintiffs that amendment is necessary due to discovery of "new facts" or due to error in pleading. The facts upon which all of plaintiffs' claims have rested have long been clear, and leave to amend only harasses defendants further, requiring them to address the same issues in yet another legal context.

this case have already been presented to and decided by numerous courts.

For the foregoing reasons, leave to again amend is denied, and the instant matter is dismissed in its entirety. Defendants' application for fees and expenses under Rule 11 of the Federal Rules of Civil Procedure are denied.

The Clerk is directed to enter judgment dismissing the complaint and to mail a copy of the within to all parties.

SO ORDERED.