OPINION OF THE COURT
John J. Ark, J.
Pursuant to agreements in 1961 and 1975, the County is to maintain and operate certain parks owned by the City. Included in these parks are three golf courses which the County will operate until February 1, 1997 when the County grants a license to Jack Tindale, Inc. (Tindale) to do so. The initial term of the license ends on December 31, 2001, unless sooner terminated pursuant to the contract. In addition to termination for cause, the County, at its sole discretion and without cause or default, has the right to cancel the license at any time by giving Tindale at least 12 months’ written notice of its intention to cancel.
The license provides stringent oversight by the County of Tindale’s operation and management of the golf courses, to wit: its use, golf fees, operator’s fees, annual budget, standards of performance, food service, capital improvements and alterations, pro shop services, products and services, dates and hours of opening, marketing promotions, maintenance and cleaning, discipline and training of management and nonmanagement personnel, customer claims and complaints, books and records, and a prohibition of assignment of the license.
The County asserts that the license transfers no right, title or interest in the parks or the golf course facilities to Tindale. *493 The license specifically sets forth that Tindale does not have an exclusive right to use and occupy the golf course facilities. The public, for whom the golf course facilities are held in trust by the City and County, has the unfettered right to use the golf course facilities at all times for recreational purposes as long as it does not interfere with golf play. Furthermore, the County retains the naming rights and the ability to physically modify the golf course facilities.
Plaintiffs Rebecca Ott, a City of Rochester resident and taxpayer, and Samuel Grossfield, a City of Rochester resident and golfer on the instant courses, brought this action seeking judgment:
(1) Pursuant to CPLR 3001, declaring the County to be in breach of the 1961 agreement as amended and enjoining the County from taking any action that would result in the transfer of any right, title or interest in the park or golf courses, to any private individual, corporation, or other entity organized for the purpose of making a profit;
(2) Declaring the City and the County to be trustees of the parks and enjoining them from violating their trust by conveying to a private, profit-making person or enterprise a portion of those parks, more particularly, enjoining the defendants from "privatizing” the municipal golf courses located in the parks;
(3) Permanently enjoining the City and County from conveying any interest in the parks or golf courses to any third party;
(4) A writ of prohibition prohibiting the County Executive from assigning the 1961 agreement as amended, or from assigning a portion of said agreement;
(5) Alternatively, in the nature of a writ of mandamus ordering the City of Rochester to assume its duties and obligations as trustee of the municipal parks and the municipal golf courses they contain by declaring the 1961 agreement as amended abandoned by the defendant County.
Petitioner Civil Service Employees Association, Inc., Monroe County Local No. 828 (CSEA), which represents a majority of County employees for collective bargaining purposes under article 14 of the Civil Service Law, and the County are parties to a collective bargaining agreement dated March 13, 1996. At least 18 full-time County Parks Department employee positions will be abolished as a result of the Tindale contract.
The CSEA has brought its CPLR article 78 proceeding and declaratory judgment action to: (1) prohibit the County from entering into an agreement with Tindale for the operation of *494 the golf courses; (2) prohibit the transfer of the operation and maintenance of the golf courses to Tindale; (3) prevent the County from abolishing the positions of the CSEA employees now working at the three golf courses; and (4) enjoin the respondents from "privatizing” the three public golf courses.
PROCEDURAL ISSUES
The defendants/respondents correctly assert that, as required by General Municipal Law § 51, whereby a taxpayer is authorized to commence an action "to prevent * * * illegal official act[s]”, or "to prevent waste or injury to, or to restore and make good, any property, funds or estate of [a municipality]”, neither Samuel Grossfield nor the CSEA is a taxpayer. Furthermore, pursuant to section 51, neither Rebecca Ott nor Samuel Grossfield nor the CSEA has posted the bond required upon commencement of these actions.
Regardless of its lack of General Municipal Law § 51 standing, the CSEA claims that an article 78 proceeding may be brought where a party can show a harmful effect. Although the CSEA does not allege in its petition any harmful effect to itself, it makes the claim on behalf of the prospectively terminated golf course employees. However, those employees must remedy any termination pursuant to the existing collective bargaining agreement and/or the Civil Service Law (see, Matter of Board of Educ. v Ambach, 70 NY2d 501).
SUBSTANTIVE ISSUES
Should the plaintiffs and petitioner survive their procedural infirmities, the license would be void if it is determined to be: (1) a lease, thereby requiring State Legislature approval; (2) an assignment, thereby violating the 1961 and 1975 agreements between the County and the City; or (3) in violation of certain State statutes.
Lease or License
Curiously, the County cites Miller v City of New York (15 NY2d 34) as authority that the Tindale license is not a lease. In Miller, the Court held that the revocation provisions of the license were similar to those of a commercial lease and thereby deemed the purported license to be a lease. Respondents attempt to distinguish Miller by claiming that the Miller revocation-at-will was limited to "paramount-purpose” or "pressing-public need” situations, whereas the Tindale revocation-at-will is unlimited.
*495 Although a revocation clause may be relevant to the determination of whether an agreement is a license or a lease, in Matter of Citiwide News v New York City Tr. Auth. (62 NY2d 464), the Court of Appeals held that a 15-year, 51-page agreement to operate newsstands in the New York City subway system, whereby the New York City Transportation Authority received payment of $62,210,000 with no revocation-at-will provision, was a license. The Court looked to the " 'total character of the arrangement’ ” as being "clearly that of a license agreement for the maintenance and operation of newsstands” (Matter of Citiwide News v New York City Tr. Auth., supra, at 470). "In addition to setting forth such provisions as the term of the license, the compensation to be paid, and the licensee’s obligations with respect to the maintenance of the property, the master license regulates the conduct of business at the subway station newsstands in some detail. Thus, the license details the items that may be sold at the newsstands and those that must be provided, the reports and records to be maintained, management and supervision requirements, the licensee’s obligations with respect to utilities, insurance, safety and sanitary conditions, and sets forth a sublicense agreement to be used should a limited number of the newsstands be subleased pursuant to the terms of the agreement. The master license also contains the parties’ agreement concerning the required construction of new newsstands, the estimated cost of which is $2 million. Pursuant to the agreement, all newsstands, as well as improvements to existing stands, become the property of the Authority when made” (Matter of Citiwide News v New York City Tr. Auth., supra, at 469-470).
The plaintiffs / petitioner further maintain that the five-year period of the Tindale agreement denotes a lease and not a license. However, as set forth in Gushee v City of New York (42 App Div 37, 43 [1st Dept]), "[i]t cannot be said, as a matter of law, that the granting of a license for five years is unreasonable”. Likewise, in Citiwide News (supra), the license was for 15 years.
Plaintiffs’ most persuasive argument, that the one-year revocation-at-will provision is tantamount to a series of year-to-year leases within a five-year period, is not determinative since Citiwide News (supra) did not indicate the necessity of a revocation-at-will provision in order to define a license.
Accordingly, based on the clear intent of the parties, the presence of an unfettered (but year long) revocation-at-will clause, and the analogy of Citiwide News (supra), this court finds the Tindale agreement to be a license.
*496 Assignment
The 1975 parks agreement mandates "[t]hat the County shall not assign this agreement.” The license reserves to the County direct control over every aspect of the management, operation and maintenance of the golf courses by Tindale. In addition, not only can the County revoke at-will the license in its entirety without cause, but the City is supportive of the license. Accordingly, this court finds that the license is not an assignment in contravention of the 1961 and 1975 City/County agreements.
Statutory Violations
The claims that Monroe County, which operates under a charter and without a parks commission, is in violation of Alternative County Government Law §§ 501 and 502, County Law § 221 and General Municipal Law § 99-e are dismissed since none of these sections apply to the instant situation.
Finally, "when a court resolves the merits of a declaratory judgment action against the plaintiff, the proper course is not to dismiss the complaint, but rather to issue a declaration in favor of the defendants” (Maurizzio v Lumbermens Mut. Cas. Co., 73 NY2d 951, 954). Accordingly, the defendants/ respondents are granted their requested relief consistent with this decision.